**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Kipp R. Gibbs,<br>Plaintiff,<br><br>v.<br><br>SLM Corp. (a.k.a. Sallie Mae and as USA Education, Inc.), Sallie Mae Servicing, L.P., Nellie Mae, USA Funds, General Revenue Corporation,<br>Defendants. | CIVIL ACTION NO. 03-CV-12565PBS<br><br>Amended Complaint (1/5/04) |

## INTRODUCTION

This is a class action against the Defendants jointly and severally, who appear to operate as a joint enterprise, brought by the representative plaintiff on his own behalf and on behalf of a class of Massachusetts student loan borrowers and other student loan borrowers throughout the country, seeking compensatory, punitive and injunctive relief for unlawful collection practices, duress, inaccurate credit reporting, increased interest charge, added penalties, and economic injury. This action arises from various defendants' negligence, coercion of borrowers to consolidate debt, violation of state and federal law and federal regulations, and failure to adequately monitor and control employees' and companies' collection activities on student loans.

## PARTIES

1. Kipp Gibbs is a citizen of the Commonwealth of Massachusetts who, at all relevant times, has had a domicile or usual place of business in Barnstable, Massachusetts.

2. Defendant, SLM Corp., is a corporation formed pursuant to the laws of the State of Delaware and having its principal place of business at 11600 Sallie Mae Drive, Reston, VA 20193. Defendant, SLM Corp., and/or its subsidiaries is engaged in administering and/or servicing student loans—the majority of this activity is performed for national and state guarantee agencies for its own benefit and profit—and is a holding company of the other named defendants, except for USA Funds, which it merely controls. SLM Corporation and its subsidiaries, other than the Student Loan Marketing Association (not a named defendant) are not sponsored by or agencies of the United States. SLM Corp. is a for profit corporation listed on the New York Stock Exchange. Based upon knowledge and belief, Defendant and/or its subsidiaries services or has serviced more than 50 million student loans since 1973. Defendant, SLM Corp., and/or its subsidiaries, based upon knowledge and belief, currently owns, service(s) or administer(s) student loans for more than 7 million borrowers, whose combined loan values exceed $85 billion.

3. Defendant, Sallie Mae Servicing, L.P., is a for profit limited partnership formed pursuant to the laws of the State of Delaware as a corporation on November 1, 1995 and converted to limited partnership status on March 31, 2001 and having its principal place of business at 11600 Sallie Mae Drive, Reston, Virginia 20193. Defendant, Sallie Mae Servicing, L.P., manages and operates the loan servicing functions for SLM Corporation, all of its subsidiaries and its affiliates, is engaged in servicing student loans for national and state guarantee agencies for its own benefit and profit and the benefit and profit of SLM Corporation, its parent company, but is itself neither sponsored by nor an agency of the United States. Defendant, Sallie Mae Servicing, L.P., is a wholly-owned subsidiary of SLM Corp. Based upon knowledge and belief, Defendant, Salle Mae Servicing, L.P., services or has serviced more $100 billion in student loans.

4. Defendant, Nellie Mae, is a corporation formed pursuant to the laws of the State of Massachusetts and having its principal place of business at 50 Braintree Hill Park, Suite 300, Braintree, MA 02184. Since 1999, Nellie Mae has been a wholly-owned subsidiary of Defendant, SLM Corp. Defendant, Nellie Mae, is neither sponsored by nor an agency of the United States. Based upon knowledge and belief, Defendant, Nellie Mae, is or has been engaged in the processing and/or administration of student loans. When Defendant, Nellie Mae, was acquired by SLM Corp. in 1999, Nellie Mae had a portfolio of $2.6 billion in student loans.

5. Defendant, USA Funds (United Student Aid Funds), is a private, nonprofit corporation formed pursuant to the laws of the State of Delaware and having its principal place of business at 10475 Crosspoint Boulevard, Indianapolis, Indiana. Defendant, USA Funds, is a guarantor of student loans for national and state agencies. Student loans for which USA Funds provides accounting for directly affect the bottom line of its for profit affiliate SLM Corp. and SLM Corp.'s for profit subsidiaries. USA Funds is a registered service mark of SLM Corp. It is the only nonprofit organization functioning within the 17 companies that comprise the multi-billion dollar corporate empire of SLM Corporation. Defendant, USA Funds, is administered by Sallie Mae Servicing, L.P., a wholly-owned subsidiary of SLM Corp. It is neither sponsored by nor an agency of the United States. Based upon knowledge and belief, Defendant, USA Funds, currently administers and/or provides accounting for more than $37 billion dollars of student loans.

6. Defendant, General Revenue Corporation, is a corporation formed pursuant to the laws of the State of Ohio and having its principal place of business at 11501 Northlake Drive, Cincinnati, Ohio 45249, and is a wholly-owned subsidiary of SLM Corp. Defendant, General Revenue Corporation, is a collection agency for student loans and consumer loans. It is neither sponsored by nor an agency of the United

States. Defendant, General Revenue Corporation, is the largest college and university-focused collection agency in the country.

## **CLASS ACTION ALLEGATIONS**

7. The above named plaintiff brings this action on his own behalf and on behalf of all other citizens or other individuals within the United States, or otherwise domiciled, who are similarly situated, having or having had loans serviced by the Defendants.

8. Those present or former residents of the United States who are members of the class of persons who have had loans serviced by the Defendants and who have suffered injuries thereby are so numerous as to make it impractical to join all members of the class of plaintiffs. Based upon knowledge and belief, the number of class members is in excess of 10,000 persons.

9. There are questions of law and fact, which are common to all members of the class. Furthermore, the questions of law and fact common to the class members predominate over any question affecting any individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The questions of law and fact for the nationwide class deal primarily with Federal law, Federal regulations and with the Uniform Commercial Code. Accordingly, there are no known or appreciable variations in state law germane to the present case. Additionally, there is no statute of limitations for student loans, 20 U.S.C. § 1091a. (Pursuant to the equal protection clause of the 14th Amendment, Plaintiff asks this Court, United States District Court, District of Massachusetts, to rule that the statute of limitations is a two-way street in regard to students and student loan borrowers' ability and standing to file suit. Any other reading of 20 U.S.C. § 1091a would be unconstitutional.)

10. The person named as representative plaintiff will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to claims stated herein.

11. The representative plaintiff has individually discovered the inequities in regard to unlawful collections by the Defendants and has identified other collection practices that are in violation United States Code, researched and distilled the corporate scheme of the Defendants, helped to formulate the legal strategy, put together the evidence necessary to prove the allegations, has researched and tabulated relevant laws and regulations, and has retained competent counsel.

**FACTS**

12. Over the course of his college education Kipp Gibbs entered into contracts for student loans with the following lenders: Barnett Bank, AFSA, ELSI and ELSC.

13. In 1995, USA Funds and Nellie Mae pressured Mr. Gibbs into signing a consolidation note under duress. Under the terms of this consolidation, interest that had accrued on his loans was capitalized and added to the principal. This capitalization increased the amount of interest accrued yearly by raising the average interest rate on his student loans and increasing the principal upon which interest is calculated. Consolidation also renewed the credit history reporting period with an additional seven years, which has negatively affected plaintiff's credit.

14. Plaintiff entered deferment from 11/01/96 thru 4/21/97 and from 7/98 thru 7/99.

15. Subsequent to the initial deferment, Plaintiff made scheduled payments on the consolidation loan.

16. In 1998, Plaintiff entered a period of financial difficulty, during which time he did not have the financial wherewithal to remit payment.

17. On August 18, 2000, Plaintiff's consolidation loan entered default status, according to Defendant, USA Funds.

18. Interest was calculated on an amount not agreed upon, in violation of Article 3 of the Uniform Commercial Code and Title 34 of the Code of Federal Regulations.

19. Subsequently, without notice or authority, Defendant(s) augmented penalty amount, in violation of 20 U.S.C. §§ 1080(d), 1082 and 34 CFR § 682.401.

20. On October 4, 1992 Plaintiff discovered additional entries made on his credit report without removal of previous entries, thereby doubling the amount of outstanding debt reported to credit bureaus.

21. On or about November of 2002, Mr. Gibbs contacted General Revenue Corporation (GRC) to inquire about payment in full and how to remove negative credit. Plaintiff, Kipp Gibbs, pointed out to GRC that his credit report showed the incorrect date of default.

22. Subsequently, proof of the incorrect default date was removed from his credit report.

23. Defendant, General Revenue Corporation, began to harass Mr. Gibbs.

24. Defendant, General Revenue Corporation, attempted to coerce Mr. Gibbs to sign another promissory note, which would increase the principal that he owed and

would extend the amount of time it remained on his credit. Such pressure has been applied continuously over the past year.

25. Mr. Gibbs continued to communicate with GRC via telephone in an attempt to correct the balance and inaccurate history. GRC stated that Nellie Mae reported to the credit bureaus, and to speak to them if it was inaccurate.

26. Mr. Gibbs contacted Nellie Mae, who said GRC was responsible for reporting to the credit bureaus.

27. After repeated attempts to resolve these issues via telephone over several months, on April 19, 2003 Mr. Gibbs wrote to GRC regarding the incorrect balance.

28. Before and after the 19th of April 2003, Mr. Gibbs continued to receive phone calls from and placed calls to Defendants, General Revenue Corporation, Sallie Mae Servicing, L.P., Nellie Mae and USA Funds. These phone calls did not produce any results, and often became a vehicle for the Defendants to threaten and harass Mr. Gibbs.

29. On August 18, 2003, after dozens of attempts to remedy the above matters by telephone, Mr. Gibbs wrote to the credit bureaus and to Defendant, General Revenue Corporation. Plaintiff, Mr. Gibbs, throughout the past year stated via telephone that he would file a civil action if they continued to disregard these issues.

30. On August 19, 2003, Defendant, Sallie Mae Servicing, L.P., replied in writing to telephone calls he had placed to SLM Corp. (Sallie Mae), the parent company, and to Sallie Mae Servicing, L.P., noting that, "You recently contacted Salle Mae...about your education loans...." In the letter Mr. Gibbs' complaints were not addressed, but

instead the letter was in the format of a form letter, which was unrelated to the issues he had raised.

31. Plaintiff, Kipp Gibbs, replied to this letter on August 26, 2003, describing the variance between issues he apprised them of and their response, and again asked that the inaccurate credit reporting and balance be corrected. In this letter, Plaintiff, Mr. Gibbs also noted, "The collection agency [General Revenue Corporation] repeatedly violates federal law by making misrepresentations that run the gamut from the absurd, 'There is no federal law about student loans' (when questioned about their practices) to the plausible, but specious; and by excessive harassment, belligerence and prevarication which varies per phone call, wherein representatives say whatever they like, often disagreeing with each other. This appears to be a game to the employees...."

32. On September 15, 2003, Defendant, Sallie Mae Servicing, L.P., replied in writing, in the name of USA Funds, to Plaintiff's letter indicating that they did not intend to address the above matters.

33. Items in Mr. Gibbs' written correspondence and matters raised in subsequent phone calls were ignored. During this time, Defendant, General Revenue Corporation, continued to try to coerce Mr. Gibbs into capitalizing approximately $23,000 in interest and penalties into a new consolidation loan, wherein the principal balance would then become approximately $50,000.00, rather than $27,531.11.

34. On October 15, 2003, Plaintiff, Kipp Gibbs, wrote to Defendant, General Revenue Corporation, and to Defendant's legal department informing them that he would file suit if they continued to refuse to address the issues he had raised.

35. Phone calls after this still provided no results.

36. On November 17, 2003 Plaintiff faxed to Defendant, General Revenue Corporation, a final communiqué regarding the above matters.

## COUNT I

Plaintiff realleges and incorporates herein paragraphs 1 through 36 of this complaint.

37. Defendants coerced representative plaintiff to sign a new consolidation loan under duress, which significantly increased both the principal owed, the rate at which interest accrues and the amount of time that negative credit appears on his credit report.

Wherefore:

   a. Plaintiff, Kipp Gibbs, demands judgment against Defendants in the amount of $25,000.00.

   b. The plaintiff class demands judgment against Defendants in an amount in excess of $16,250,000,000.00 ($16.25 billion).

## COUNT II

Plaintiff realleges and incorporates herein paragraphs 1 through 36 of this complaint.

38. Defendants misrepresented his rights under the consolidation loan by leading him to believe that they would remain unchanged. When, in fact, during periods of

deferment, the government would no longer pay interest charges. Plaintiff's previous loans did provide such protection. This was fraud in the inducement and fraudulent misrepresentation.

Wherefore:

a. Plaintiff, Kipp Gibbs, demands judgment against Defendants in the amount of $5849.37.

b. The plaintiff class demands judgment against Defendants in an amount of $3,802,090,500.00 ($3.802 billion), or such amount as is mathematically determined.

## COUNT III

Plaintiff realleges and incorporates herein paragraphs 1 through 36 of this complaint.

39. The injuries sustained by the Plaintiff, Kipp Gibbs, were directly and proximately caused by the negligence of the Defendants, SLM Corp., Sallie Mae Servicing, L.P., Nellie Mae, USA Funds and General Revenue Corporation as follows:

   a. Defendants engaged in negligent and tortious reporting to credit bureaus;

   b. Negligent hiring, training and supervision. Defendants negligently did not properly supervise, monitor nor provide adequate training for employees regarding credit collection practices, as set forth in the Fair Credit Debt Collection Practices Act, 15 U.S.C. § 1601.

40. As a direct and proximate result of the Defendants' negligence, the representative plaintiff has suffered undue stress and harassment; has had his credit score significantly lowered; is unable to obtain financing on a home; cannot rent an apartment from a realtor, or other such person who pulls credit; is unable to obtain gainful employment from any company which evaluates credit as a criterion; is hampered in business relationships; and is prevented from becoming licensed as a mortgage broker in his home state, which, in part, bases its decisions upon credit.

Wherefore:

   a. Plaintiff, Kipp Gibbs, demands judgment against Defendants in the amount of $100,000.00.

   b. The plaintiff class demands judgment against Defendants in an amount in excess of $10,000,000.00.

## COUNT IV

Plaintiff realleges and incorporates herein paragraphs 1 through 36 of his complaint.

41. Since SLM Corp. purchased plaintiff's loan, it gets to keep penalties and interest charged, but such purchase is not a pre-requisite to its extracting additional monies from student loan borrowers.

42. Within the complex web of the Enron-like, intricate corporate scheme of its parent company, SLM Corporation, Sallie Mae Servicing, L.P., through its administration of USA Funds, tailors and modifies its accounting information to increase the bottom line of its parent company, SLM Corporation and its wholly-owned subsidiaries.

43. Defendants willfully increased the interest charge on his student loan, which resulted in an overcharge of $939.79, by illegally capitalizing interest on his student loan, contrary to Title 34 of the Code of Federal Regulations.

Wherefore:

a. Plaintiff, Kipp Gibbs, demands judgment against Defendants in an amount in excess of $939.79, part of which has been paid, and part of which is a request for injunctive relief to prevent collection of the residuary balance, plus interest, costs, penalties and attorneys' fees.

b. The plaintiff class demands judgment against Defendants in an amount in excess of $2.6 billion (2,600,000,000.00), plus interest, costs, and attorneys' fees.

### COUNT V

44. The overcharge of interest is a breach of contract by the Defendants.

Wherefore:

a. Plaintiff, Kipp Gibbs, demands judgment against Defendants as requested in ¶ 43 of Count IV and additionally punitive damages.

b. The plaintiff class demands judgment against Defendants as requested in ¶ 43 of Count IV and additionally punitive damages.

## COUNT VI

45. The attorney for Sallie Mae, David Stocker, stated that they are aware of this charge and implemented it as required by law. This statement by the Defendant's attorney is false. Defendants conspired to defraud (conspiracy to defraud) students by purposefully overcharging their accounts.

## COUNT VII

46. Fraud. The Defendants carrying out of their plan to charge excessive interest was fraudulent.

## COUNT VIII

47. The Defendants committed numerous counts of Federal Mail Fraud in violation of federal statute 18 U.S.C. § 1341 by sending lulling letters designed to prevent students from seeking justifiable and equitable relief in a court of law.

Wherefore, for each of Counts VI, VII and VIII:

   a. Plaintiff, Kipp Gibbs, demands judgment against Defendants for punitive damages.

   b. The plaintiff class demands judgment against Defendants for punitive damages.

## COUNT IX

Plaintiff realleges and incorporates herein paragraphs 1 through 36 and paragraphs 41 and 42 of his complaint.

48. Defendants have refused to comply with Federal Regulations promulgated by the Department of Education. The Department of Education has not been able to prevent Defendants from violating its directives set forth in Title 34 of the Code of Federal Regulations.

49. Defendants have illegally augmented penalties on his student loan, which has resulted in an overcharge of $1384.56.

Wherefore:

a. Plaintiff, Kipp Gibbs, demands judgment against SLM Corp. and other Defendants in the amount of $1384.56, apportioned respectively to monetary damages and injunctive relief for the amount unpaid, plus interest, costs, penalties and attorney's fees;

b. The plaintiff class demands judgment against SLM Corp. and other Defendants in an amount in excess of $899,964,000.00, plus interest, costs, penalties and attorney's fees.

_____
Kipp R. Gibbs
Representative Plaintiff
Pro Se
PO Box 42
Osterville, MA 02655
(508) 292-2280