IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIPP GIBBS, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SLM CORPORATION,  SALLIE MAE SERVICING L.P., NELLIE MAE, USA FUNDS, and GENERAL REVENUE CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 03-CV-12565-PBS |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT (1/5/04)

Peter E. Gelhaar (BBO #188310)
Matthew N. Kane (BBO #636801)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
(617) 720-2880

Defendants SLM Corporation, Sallie Mae Servicing, L.P., Nellie Mae, United Student Aid Funds, Inc. ("USA Funds"), and General Revenue Corporation (collectively the "Defendants"), submit this memorandum in support of their motion to dismiss the Plaintiff's Amended Complaint 1/5/04 ("Amended Complaint") pursuant to Fed. R. Civ. P. 12 (b)(6).

## INTRODUCTION

The Plaintiff, Kipp Gibbs ("Plaintiff") obtained several student loans under the Federal Family Education Loan Program ("FFELP") to finance his college education. In 1995, the Plaintiff consolidated his student loans (the "1995 Consolidated Loan"). After making the initial payments on the 1995 Consolidated Loan, the Plaintiff obtained two deferments and subsequently defaulted. The 1995 Consolidated Loan was placed in default in 2000.

Now, almost nine years after he entered into the 1995 Consolidated Loan (and almost three years after his default), the Plaintiff alleges that the loan is somehow void on the grounds of duress. In addition, he alleges (without even attempting to differentiate among the individual Defendants) that "the Defendants" have committed various unlawful acts in the administration and collection of the 1995 Consolidated Loan. In sum, he alleges that the Defendants improperly charged him $8,173.72 in interest and penalties.

The Plaintiff's far-reaching Amended Complaint is not limited to his student loan. Instead, he seeks to certify a limitless class of *anyone, anywhere* who has *ever* had a student loan serviced by *any* of the Defendants at *anytime*. Most importantly, he seeks

1

damages on behalf of this class in the amount of over $23.5 *billion*—though he provides absolutely no basis in the Amended Complaint for his calculation of this enormous sum.[1]

Since he initially filed this case on December 3, 2003,[2] the Plaintiff has amended his complaint *four* times. Although he alleges the same set of operative facts, the Plaintiff's claims have tripled. In his most recent filing (the Amended Complaint), he purports to allege nine claims for duress, fraud, negligence, breach of contract, and alleged violations of regulations promulgated by the Department of Education implementing the Higher Education Act of 1965, as amended ("HEA") and the Mail Fraud Statute. (18 U.S.C. § 1341).

All of these claims must be dismissed. First, the Plaintiff cannot state a claim alleging violations of the regulations promulgated under the HEA or the Mail Fraud Statute. There is no private right of action under these regulations and statute. Second, many of the Plaintiff's claims are preempted by Federal Law, which provides a detailed framework for the administration and regulation of federally-insured student loans. Finally, the Plaintiff has failed to allege the requisite elements or facts necessary to support his claims.

Accordingly, the entire Amended Complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12 (b)(6).

---

[1] In his Amended Complaint, the Plaintiff stated that he "has retained competent counsel" to represent this gigantic class. (Amended Complaint ¶11). In fact, he had not retained any such counsel. Instead, he continues to represent himself (and the purported class) in this action.

[2] In addition to the present case, the Plaintiff has also filed another pro se lawsuit in this Court captioned *Gibbs v. Golden Eagle Credit Corporation*, Civil Action No. 03-CV-11499-DPW.

## FACTS

### A.    The Parties.

Mr. Gibbs is an individual who resides in Barnstable Massachusetts. (Amended Complaint ¶ 1 ("Amend Comp. ¶__")). Mr. Gibbs obtained student loans to finance his college education and subsequently defaulted on those loans. (Id. ¶¶ 12, 16-17).

SLM Corporation ("SLM") ,commonly known as Sallie Mae, is the ultimate parent corporation of the various Sallie Mae divisions and subsidiaries. SLM was created pursuant to the Student Loan Marketing Association Reorganization Act of 1996 ("the Reorganization Act"). SLM is a publicly traded corporation listed on the New York Stock Exchange.[3]

Sallie Mae Servicing, L.P. was a limited partnership whose sole general partner was Sallie Mae, Inc.[4] At all relevant times, Sallie Mae Servicing L.P. serviced loans for its affiliate, the Student Loan Marketing Association ("SLMA") and other holders of federally-insured student loans. Congress established SLMA to provide a national secondary market for student loans under the HEA. 20 U.S.C. § 1087-2. SLMA therefore purchases student loans—originated by other lenders—to create liquidity for the student loan program.[5]

---

[3] There is no factual basis asserted in the complaint upon which SLM Corporation can be held liable in this action. The U.S. Supreme Court has repeatedly upheld the limited scope of the potential liability of parent corporations for the acts of their subsidiaries. In *United States v. Bestfoods*, 524 U. S. 51, 61 (1998), the Court stated: "[I]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries." Accordingly, all claims should be dismissed as against SLM Corporation separate and apart from the reasons set forth *infra*.

[4] On December 31, 2003, Sallie Mae Servicing, L.P. was merged into Sallie Mae, Inc.

[5] Under the Reorganization Act, SLMA is being wound down as Sallie Mae transitions from a government-sponsored enterprise status to a fully private corporation.

Although the Plaintiff purports to allege claims against Nellie Mae, there is no entity known simply as "Nellie Mae." Instead, there are two separate entities within the SLM corporate structure known as Nellie Mae Corporation and Nellie Mae Holding LLC. Nellie Mae Corporation provides education financing for undergraduate and graduate students and families under the FFELP and privately funded loan programs. Nellie Mae Holding LLC is a Delaware limited liability corporation. Nellie Mae Holding LLC's sole member is the SLMA.[6]

General Revenue Corporation ("GRC") is the nation's largest university-focused collection agency. GRC is a subsidiary of USA Group Enterprises LLC, a Delaware limited liability corporation whose sole member is SLM.

USA Funds is a nonprofit guarantee agency that supports access to education. USA Funds has grown to become the nation's largest guarantor of loans made under the FFELP.

## B.    The Plaintiff's Student Loan and Subsequent Default.

The Plaintiff obtained four separate student loans to finance his college education. (Amend. Compl. ¶ 12). In 1995, Mr. Gibbs agreed to consolidate these loans. (Id. ¶ 13).[7] Thereafter, Mr. Gibbs made scheduled payments on the 1995 Consolidated Loan. (Id. ¶ 15). In 1996, Mr. Gibbs requested and received a deferment. (Id. ¶ 14). He requested and received a second deferment in 1998. (Id. ¶ 14). Thereafter, he failed to make the

---

[6] Because the Plaintiff has failed to state any claims against any of the Defendants including "Nellie Mae," it is not necessary for present purposes to determine which entity the Plaintiff intended to name as a defendant in this lawsuit.

[7] From the Plaintiff's allegations, it is not clear which entity— Nellie Mae or some other entity—issued the 1995 Consolidated Loan. Amend. Comp. ¶ 13; *see also infra* Section III(3).

required payments. (Id. ¶16).  In 2000, USA Funds placed the Plaintiff's 1995 Consolidated Loan in default. (Id. ¶ 17).

In 2003, the Plaintiff had several communications with Sallie Mae Servicing L.P., Nellie Mae and GRC. (Id. ¶¶24, 26, 30). Although GRC allegedly suggested that the Plaintiff consider consolidating his loans with the amounts of outstanding interest and penalties, the Plaintiff refused. (Id. ¶¶ 33-36). Accordingly, the Plaintiff's 1995 Consolidated Loan remains in default.

After his default, the Plaintiff alleges for the first time that "interest was calculated on an amount not agreed upon" and that he has been assessed improper penalties. (Id. ¶¶ 17-18). In total, the Plaintiff alleges that he was improperly charged $8,173.72 in interest amounts and penalties. (Id. ¶¶ 38(a), 42, 49). In addition, the Plaintiff alleges that there were improper entries made to his credit report. (Id. ¶¶ 20-22, 25-26).

The Plaintiff has filed several complaints in this matter. The Plaintiff initially filed this matter in Barnstable Superior Court on December 3, 2003. He then filed an amended complaint on December 4, 2003. He filed another amended complaint on December 9, 2003. This case was removed to this Court on December 19, 2003. Four days later, on December 23, 2003, the Plaintiff filed yet another amended complaint. On January 5, 2004, the Plaintiff filed his *fifth* complaint, the "Amended Complaint 1/5/04," which is the subject of the present motion.[8]

---

[8]  On January 7, 2004, the parties filed a stipulation providing that the Defendants had until January 26, 2004 to answer or otherwise respond to the Amended Complaint. The parties further agreed that the four previous complaints had been superseded and therefore, required no response. That stipulation was endorsed by this Court on January 9, 2004.

<u>ARGUMENT</u>

## I. COUNTS IV, VIII, AND IX MUST BE DISMISSED BECAUSE THE PLAINTIFF DOES NOT HAVE ANY PRIVATE RIGHT OF ACTION TO ASSERT THOSE CLAIMS.

### 1. There Is No Private Right of Action for the Alleged Violations of Regulations Promulgated by The Department of Education.

In Counts IV and IX, the Plaintiff alleges that the Defendants violated certain regulations promulgated by the United States Department of Education. First, the Plaintiff alleges that the Defendants "willfully increased the interest charge on his student loan, which resulted in an overcharge of $939.79... contrary to Title 34 of the Code of Federal Regulations." (Amend. Compl. ¶ 43). Then, he alleges that the Defendants "have illegally augmented penalties on his student loan resulting in an overcharge of $1384.56," also allegedly in violation of Title 34 of the Code of Federal Regulations. (Amend. Compl. ¶49).

As a preliminary matter, the Plaintiff has not even attempted to identify which particular regulations he alleges were violated. Instead, he cites generally to all of the regulations promulgated by the Department of Education under Title 34. Having failed to identify any specific violations, the Plaintiff's claims necessarily fail.

Moreover, his claim also must fail because there is no private right of action under the Department of Education regulations. The FFELP was established pursuant to the Higher Education Act. 20 U.S.C. §1071, *et seq.* Congress delegated authority for supervision and enforcement of the Higher Education Act to the Secretary of Education. 20 U.S.C. §1082(a)(2). There is a detailed structure of regulations that govern the remedial actions that the Secretary of Education may take against lenders and servicers for any violations of the statute, rules and regulations governing the FFELP loans.

6

*McCullogh v. PNC Bank*, 298 F.3d 1217, 1226 (11th Cir. 2002) (noting that the regulations impose "specific and detailed" requirements).

Because the Secretary of Education has exclusive authority to enforce these provisions of the Higher Education Act and the regulations promulgated thereunder, there is no private right of action  *See, e.g., Slovinec v. DePaul Univ.*, 332 F.3d 1068, 1069 (7th Cir. 2003) (affirming dismissal of former student's claims arising from his loans because there is no private right of action under the HEA); *L'ggrke v. Benkula*, 966 F.2d 1346, 1348 (10th Cir. 1992) ("The express language of the Higher Education Act, and the regulations promulgated thereunder, does not create a private cause of action...").[9]  If the Plaintiff believes that there have been violations of Title 34, then his only remedy is to present these claims to the Secretary of Education.  20 U.S.C. §1082(b); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484-85 (9th Cir. 1995)(holding that there is no private right of action under the Higher Education Act and stating that alleged violations of Department of Education regulations should be presented to the Secretary of Education).

Because the Plaintiff does not have a private right of action to enforce these Department of Education regulations, Counts IV and IX must be dismissed.

### 2.  There is No Private Right of Action Under the Federal Mail Fraud Statute.

In Count VIII, the Plaintiff attempts to state a claim under the Federal Mail Fraud Statute.  18 U.S.C. § 1341.  The Plaintiff alleges that the Defendants sent "lulling letters designed to prevent students from seeking justifiable and equitable relief in a court of law." (Amend. Comp. ¶ 47).  It is wholly unclear what the Plaintiff means by "lulling

---

[9]  *See also McCullogh v. PNC Bank*, 298 F.3d at 1221 (same); *Labickas v. U.S. Dep't of Education*, 78 F.3d 333, 334 (8th Cir. 1996) (same).

letters," to whom these letters were allegedly sent, when these letters were sent, which of the Defendants allegedly sent such letters, or how they could constitute a criminal violation.

In any event, the Court need wade no further; the Mail Fraud Statute is a bare criminal statute with no private right of action. 18 U.S.C §1345 (providing that the Attorney General alone has the authority to seek injunctive relief to stop mail fraud). Indeed, courts have routinely dismissed such allegations when asserted by private litigants. *See, e.g., Ryan v. Ohio Edison Co.,* 611 F.2d 1170, 1179 (6th Cir. 1979) (affirming dismissal and stating that "Congress did not intend to create a private right of action for plaintiffs under the Mail Fraud Statute"); *White v. Apollo Group,* 241 F. Supp.2d 710 (W.D. Tex. 2003) (dismissing claims and stating that "[t]he Mail Fraud Statute is criminal in nature and it does not create a private right of action").

Therefore, the Plaintiff's claim for violations of the Mail Fraud Statute must be dismissed.

## II.    THE PLAINTIFF'S NEGLIGENCE CLAIM (COUNT III) IS BARRED BY THE FAIR CREDIT REPORTING ACT AND THE FAIR DEBT COLLECTION PRACTICES ACT.

In Count III, the Plaintiff attempts to allege a claim for negligence arising from two distinct circumstances. First, he alleges that the "Defendants engaged in negligent and tortious reporting to the credit bureaus." (Amend. Comp. ¶ 39(a)). Next, he alleges that the Defendants were negligent in their "hiring, training and supervision" of their personnel. (Id. at (b)). Neither allegation is sufficiently pled.

### a. The Plaintiff Has Failed to State a Claim for Negligence Arising From The Defendants' Alleged Reporting to Credit Bureaus.

The Amended Complaint alleges that "[o]n October 4, 1992, Plaintiff discovered additional entries on his credit report without removal of previous entries, thereby doubling the amount of outstanding debt to the credit bureaus." (Amend. Compl. ¶20). Insofar as the Plaintiff discovered the alleged negligence in 1992—more than eleven years ago—his claim is barred by the statute of limitations. M.G.L. c. 260 §2A (tort claims in Massachusetts must be filed within three years after the action accrues). [10]

Leaving aside the statute of limitations issue, the Plaintiff's claim—that the Defendants made improper reports to the credit bureaus— is pre-empted by Federal Law. The Fair Credit Reporting Act ("FCRA") governs the "accuracy and fairness of credit reporting." 15 U.S.C. § 1681 *et. seq.* Specifically, the FCRA requires lenders and reporting entities to provide accurate information to credit reporting agencies. 15 U.S.C. § 1681s-2(a). The Plaintiff's negligence claim—that the Defendants acted negligently in reporting to the credit bureaus— should therefore be construed under Section 1681s-2(a) of the FCRA. In essence, the Plaintiff alleges that the Defendants breached their duty of care by failing to provide accurate information, as required by Section 1681s-2(a).

There is, however, no private right of action for negligence against entities that provide information to credit bureaus under the FCRA. In fact, Congress has specifically limited the enforcement of these duties to governmental bodies. 15 U.S.C. §1681s-2(d) (providing that the duties of furnishers of information to provide accurate information

---

[10]  His negligence claims are also time-barred under the Fair Credit Reporting Act ("FCRA"). Any claim asserted under the FCRA must be brought within two years of the date the claim arises. 15 U.S.C. §1681p

"shall be enforced exclusively under section 1681s of this title *by the Federal agencies and officials and State officials* identified in that section.").

Even if the Plaintiff's claim were somehow construed outside of Section 1681s-2(a), it is still barred. The FCRA provides a qualified privilege for reporting agencies and entities who furnish credit information. Specifically, the FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed... except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). This qualified privilege can be overcome only if the Plaintiff alleges that Sallie Mae acted with either malice or willful intent to injure him. *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980)(stating that malice or willful intent must be alleged); *Mitchell v. Surety Acceptance Corp.*, 838 F. Supp. 497, 501 (D. Colo. 1993)(same).[11]

Here--despite filing numerous amendments to his complaint--the Plaintiff has not alleged malice or willful intent. Nor has he alleged any facts to support any such claim.

Indeed, the Plaintiff has wholly failed to allege any of the elements or facts necessary to support a common law negligence claim. For example, the Plaintiff does not make any attempt to identify which Defendant allegedly made these reports to the credit bureaus. In fact, there is no allegation that any particular Defendant placed any entries on Plaintiffs credit report or that they were otherwise responsible for errors on his credit

---

[11] *See also Henry v. FleetBoston, et al*, 2003 WL 22401247, *2 (D. N.H. Oct. 20, 2003) (dismissing claim for negligent infliction of emotional distress where plaintiffs failed to provide evidence of the defendants' "malice or willful intent to injure, as would be necessary to avoid §1681h(e)"); *Yeager v. TRW, Inc.*, 984 F Supp. 517, 523 (E.D. Tex. 1997)(holding that plaintiff's common law negligence claim was subject to qualified immunity under the FCRA).

report. Having failed to allege: (i) who committed the alleged negligent act; and (ii) what duty, if any, that entity owed to the Plaintiff, the Plaintiff has failed to allege essential elements of his negligence claim. *Holland v. Good Bros. Inc.*, 318 Mass. 300 (1945) (affirming dismissal where plaintiff failed to adequately allege elements of her negligence claim). Moreover, holders of FFELP loans are required to report the status of delinquent loans to at least one national credit bureau. 20 U.S.C. §1080a. There are no facts pled to suggest that one or more of the Defendants did anything more than comply with the HEA statutory requirement.

Therefore, the Plaintiff's complaint should be dismissed for failure to state a claim insofar as it relates to plaintiff's allegations that the defendants were negligent in reporting information about plaintiff to the credit bureaus.

### b. The Plaintiff Has Failed to State a Claim for Negligent Supervision Under the Fair Debt Collection Practices Act.

In Count III of the Amended Complaint, the Plaintiff also claims that Defendants "negligently did not properly supervise, monitor nor provide adequate training for employees regarding credit collection practices, as set forth in the Fair Credit Debt Collection Practices Act (sic), 15 U.S.C. 1601." (Amend. Comp. ¶ 39(b)). This claim is deficient as a matter of law.

First, the Plaintiff purports to bring this claim under Section 1601 of the Fair Debt Collection Practices Act ("FDCPA"). That section of the Act requires lenders to provide "meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. §1601(a). There is no private right of action under the cited section of the FDCPA. Instead, the FDCPA

provides for exclusive administrative enforcement of these disclosure requirements. 15 U.S.C. § 1607. Accordingly, the Plaintiff's claim must be dismissed on its face.

Even if the Court were inclined to construe the Plaintiffs claim under a different section of the FDCPA (which has not been pleaded), the Plaintiff still could not state a claim. Courts have consistently ruled that the activities of student loan lenders and servicers in servicing and collecting federally insured student loans are not subject to the FDCPA where the lender or servicer first obtained the loan before the borrower was in default. *See Skerry v. Massachusetts Higher Education Assistance Corp.*, 73 F. Supp.2d 47, 56 (D. Mass. 1999) (holding that MHEA was exempt from the FDCPA because "the challenged activity concerns a debt which was not in default at the time it was obtained by that entity.").[12]

Here, the Plaintiff's own allegations make clear that his student loans were not in default at the time that the Defendants obtained the debt at issue. According to the Amended Complaint, he consolidated his loan with the Defendants in 1995. (Amend. Compl. ¶ 13). His loan was not placed into default status until August 18, 2000—five years after the Defendants obtained the loan. (Id. ¶ 17). Because the Defendants obtained the loan several years prior to default, they are exempt from the FDCPA. *Skerry*, 73 F. Supp.2d at 56 (holding that FDCPA did not apply because MHEA was not a "debt collector" within the meaning of the statute where it had obtained the debt prior to default).

---

[12] *See also Schwaeble v. Sallie Mae Servicing, L.P.*, 3:02 CU-84 (M.D. Ga. November 5, 2003) (dismissing FDCPA claim against Sallie Mae Servicing where loan was not in default when Sallie Mae obtained the loan for servicing) (attached to the Affidavit of Matthew N. Kane, Exhibit A ("Kane Aff. Ex. A")); *Brumberger v. Sallie Mae Servicing Corp.*, C.A. No. 02-2909 (E.D. La. March 28, 2003) (Sallie Mae not a debt collector under the FDCPA because it obtained the loan prior to default) (Kane Aff. Ex. B); *Edler v. Student Loan Marketing Association*, 1993 WL 625570 (D.D.C. 1993) (dismissing FDCPA claims against SLMA and defendant guarantee agency) (Kane Aff. Ex. C).

Accordingly, Count III of the Plaintiff's complaint must be dismissed for failure to state a claim insofar as it relates to plaintiff's allegations that the defendants were negligent in supervising, monitoring or training their employees in connection with their credit collection practices.[13]

## III.    THE PLAINTIFF HAS FAILED TO ALLEGE THE REQUISITE ELEMENTS OF HIS REMAINING CLAIMS.

### 1.    The Plaintiff Has Failed to State A Claim for Coercion/Duress (Count I)

The Plaintiff alleges that he was coerced into signing the 1995 Consolidated Loan under duress. In essence, he seeks a declaratory judgment—almost nine years after-the-fact—that the 1995 Consolidated Loan is null and void on the grounds of economic duress.

As a preliminary matter, the Plaintiff's claim should be dismissed under the statute of limitations. His duress claim sounds in tort. *See, e.g., Coxall v. Nichols,* 1992 WL 173321 (Mass. App. 1992) (noting that duress claim constituted a tort). The Plaintiff must therefore bring his action for duress within three years after the action accrues. M.G.L. c. 260 §2A. Here, the Plaintiff's claim accrued in 1995, when he was allegedly "pressured" to sign the Consolidated Loan. Having failed to assert any claim within the limitations period, the Plaintiff's claims are time-barred. M.G.L. c. 260 §2A.

In any event, the Plaintiff has not even attempted to allege the requisite elements of duress. To state a claim for duress, the Plaintiff must allege that: (1) he has been the

---

[13]  Even if the Plaintiff's Fair Debt Collection Practices Act claim were construed as a common law negligence claim, it still must be dismissed. Again, the Plaintiff has failed to allege: (i) which of the Defendants was allegedly negligent in training and supervising their employees; (ii) what duty, if any, these Defendants owed to him; (iii) or that any alleged injury was proximately caused by the alleged negligence. In the absence of these allegations, the Plaintiff's negligence claim must be dismissed. *See Holland,* 318 Mass. at 302 (affirming dismissal where plaintiff failed to adequately allege negligence claim).

victim of a wrongful or unlawful act or threat; and (2) that such wrongful act or threat deprived him of his unfettered will; and (3) "as a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values." *Int'l. Underwater Contractors, Inc. v. New England Tel. & Tel. Co.*, 8 Mass. App. 340, 342 (1979).

Here, the Plaintiff has not even attempted to allege these elements. (See Amend. Compl. ¶ 37). Nor has he alleged <u>any</u> facts to support these elements. Instead, he makes a single, wholly conclusory allegation that "USA Funds and Nellie Mae pressured [him] into signing a consolidation note under duress." (Amended Compl. ¶ 13). He makes this claim without any supporting allegations—even though he has filed five separate complaints with ample opportunity to do so. Indeed, he does not provide any information regarding the circumstances under which he agreed to enter into the 1995 Consolidated Loan. Nor does he allege that there was any disproportionate exchange of values. (Id. ¶37).

Most importantly, he does not allege that he was deprived of his free will. To the contrary, his allegations make clear that he repeatedly exercised his free will. First, he willingly made the initial payments due under the 1995 Consolidated Loan. (Amend. Comp. ¶ 15). Later, he requested (and received) two deferments. (Id. ¶ 14). Perhaps most tellingly, he repeatedly expressed his opinions in numerous telephone conversations and letters with the Defendants. (Id. ¶¶ 21, 25-34). It is well-established that there is no duress where, as here, subsequent acts establish that the complaining party continued to act according to his own best judgment. 14 Mass. Practice §767; *see also Delaney v. Police Chief of Wareham*, 27 Mass. App. 398, 408 (1989) (holding that there was no

duress where plaintiff exercised his own free will and accepted the benefits of the agreement).

The Plaintiff's actions here—making the initial payments on the loan and accepting the benefits of two deferments—make clear that there was no duress. Accordingly, Count I of the Amended Complaint must be dismissed.

### 2. The Plaintiff Has Failed to State a Claim for Fraud (Counts II, VI, VII).

The Plaintiff attempts to allege three separate fraud claims. First, he alleges that the Defendants somehow misrepresented Gibbs' rights under the 1995 Consolidated Loan. (Amend. Compl. ¶ 38). Next, he alleges that the Defendants engaged in a conspiracy to defraud some group of unidentified students "by purposefully overcharging their accounts." (Id. ¶ 45). Finally, he alleges that the Defendants committed fraud by "carrying out their plan to charge excessive interest." (Id. ¶ 46).

#### a.    The Plaintiff Has Failed to Allege Fraud With Particularity.

Despite filing numerous amendments, the Plaintiff has failed to plead any of these claims with the requisite particularity. Fed. R. Civ. P. 9(b)(" the circumstances constituting fraud or mistake shall be stated with particularity"). To survive a motion to dismiss, the Plaintiff must allege the time, place and speaker and content of each alleged misrepresentation. *Lirettte v. Shiva Corp.*, 27 F. Supp. 2d 268, 275 (D. Mass. 1998) (plaintiff must allege: (i) the statements that it claims are fraudulent; (ii) identify the speaker; (iii) state where and when the statements were made; and (iv) state why the statements were fraudulent).

Here, the Plaintiff has essentially conceded that he has not pleaded fraud with the requisite particularity. In a January 8, 2004 letter, the Plaintiff wrote that "[t]he

Complaint that [he] filed was written obliquely intentionally." (Kane Aff. Ex. D). Presumably, the Plaintiff drafted the Amended Complaint in this manner for some perceived tactical advantage. The problem for the Plaintiff is that Fed. R. Civ. P. 9(b) does not allow such "oblique" allegations with respect to fraud claims—especially after countless amendments to his complaint.

As the Plaintiff essentially acknowledged, the Amended Complaint does not allege fraud with the requisite particularity. In Counts II and VII, the Plaintiff has not alleged any specific statements that were made to him (or anyone else in the purported class), the person or persons who made these alleged statements, the timing of any such statements, or the basis for his belief that they were false. Nor does he even attempt to allege which of the several Defendants made any such statements. At best, he alleges that an unidentified speaker made an unidentified representation that "[led] him to believe that [his rights under the consolidated loan] would remain unchanged." (Amend. Comp. ¶ 38). The Plaintiff's subjective belief that he was defrauded-- without alleging what specific statements were made, who made them, and why they were false—is not enough. *W.R. Carney v. Cambridge Technology Partners*, 135 F.Supp.2d 235, 247 (D. Mass. 2001) (dismissing claim where plaintiffs failed to allege factual basis for their belief that statements at issue were fraudulent); *see also Doyle v. Hasbro, Inc.*, 884 F. Supp. 35, 41 (D. Mass. 1995)(dismissing fraud claim where plaintiff failed to attribute alleged statements to individual defendant).

In Count VI, the Plaintiff alleges that a Sallie Mae attorney "stated that they are aware of this charge and implemented it as required by law." Although the Plaintiff has alleged a specific statement and a speaker with respect to this Count, he has not provided

16

any basis for his belief that these statements were fraudulent. Instead, he alleges—

without any supporting facts—that the attorney's statement was false. (Amend. Compl. ¶

45). Beyond this conclusory assertion, the Plaintiff does not allege any facts to establish

that the statement was false, or that the attorney made the alleged statement knowing it

was false. Nor has he alleged the timing of any such statement. Accordingly, there is no

causal link between the attorney's alleged statement and the Plaintiff's alleged harm.

Having failed to allege these fraud claims with particularity, the Plaintiff's Claims II, VI

and VII must be dismissed.

### b.    The Plaintiff Has Failed to Allege The Elements of Fraud.

Even if the Plaintiff had alleged his fraud claims with the requisite particularity

(which he has not), his fraud claims would still fail because he has failed to allege the

requisite elements and facts necessary to support his claims. To state a claim, the

Plaintiff must allege that: (i) the defendants made a false statement; (ii) of a material fact;

(iii) with knowledge of its falsity or recklessness as to its truth or falsity; (iv) with the

intent to induce the plaintiff to act; (v) the plaintiff actually relied on the statement; (vi)

the plaintiff's reliance was reasonable; and (vii) the alleged harm was proximately caused

by the specifically identified statement. *See Danca v. Taunton Savings Bank*, 385 Mass.

1, 8 (1982).

Here, the Plaintiff has not alleged all of these elements with respect to any of his

fraud claims. (See Amend. Compl. ¶¶ 38, 45, 46). Nor has he alleged facts to satisfy the

elements with respect to each of his fraud claims. Beyond simply labeling the

Defendants' actions as "fraudulent," the Plaintiff has not alleged falsity, materiality,

knowledge of falsity, intent, reliance, the reasonableness of any such reliance, and

17

causation with respect to each alleged fraud.   Accordingly, his fraud claims must be dismissed.

### 3.   The Plaintiff Has Failed to State A Claim For Breach of Contract (Count V).

The Plaintiff alleges that the Defendants breached their contract by overcharging him $939.79 in interest.  (Amend. Comp. ¶ 44).

The Plaintiff's breach of contract claim is barred by the statute of limitations.  In Massachusetts, a breach of contract action must be commenced within six years after the cause of action accrues.  M.G.L. c. 260 §2.  Here, the plaintiff alleges that the Defendants overcharged him interest under the 1995 Consolidated Loan.  The Plaintiff entered into that agreement nearly nine years ago.  Since then, he has been aware of the interest charged under the 1995 Consolidated Loan.  In fact, he initially made several payments, presumably including interest.  (Amend. Comp. ¶ 15).  Having failed to take any action for over eight years, he cannot be permitted to assert a breach now.  *See Goldman v. New England Horsemen's Benevolent and Protective Assn., Inc.*, 2003 WL 21498929 (Mass. App. 2003) (affirming dismissal of breach of contract claim where cause of action accrued in 1995).[14]

Moreover, the Plaintiff has failed to adequately allege any breach.  To survive a motion to dismiss, the Plaintiff must allege an agreement, breach of the agreement and resulting damages.  *Carter v. Trans America  Life Ins. Co.*, 2000 WL 1299519, *2 (Mass. Super. 2000).  Here, the Plaintiff has failed to allege which agreement was breached and what that agreement requires with respect to the calculation of interest. From the face of the Amended Complaint, it is not clear whether the Plaintiff alleges that

---

[14]   The statute of limitations was not tolled by the Plaintiff's alleged duress.  *See O'Hearn v. President and Fellows of Harvard College*, 1996 WL 1348994, *2 (Mass. Super. 1996).

one or more of the Defendants breached some portion of the 1995 Consolidated Loan agreement (which the Plaintiff contends is void on the grounds of duress) or some previous loan agreement.[15]

Perhaps most troubling, the Plaintiff does not allege which of the Defendants entered into the contract at issue. Obviously, the Plaintiff cannot state a claim for breach of contract without identifying the appropriate contracting parties. The Plaintiff's claim for breach of contract must therefore be dismissed.[16]

## IV. THE AMENDED COMPLAINT SHOULD BE DENIED WITH PREJUDICE.

The Defendants respectfully request that this matter be dismissed with prejudice. First, the Plaintiff has already filed five complaints in this matter in both state and federal court. He has therefore had more than an adequate opportunity to cure his defective claims. *See Williams v. Lewis*, 342 F.2d 727, 729 (4th Cir. 1965) (no error in denying leave to amend where proposed amended claims "were substantially the same grounds as the grounds asserted in previous complaints"); *Thomas v. Amerada Hess Corporation*, 393 F.Supp. 58, 78 (M.D. Pa. 1975)("Repeated failure to cure deficiencies by amendments previously allowed is sufficient reason for exercising discretion denying leave to amend further."). He should not be permitted a *sixth* chance to cure his claims.

---

[15] The Plaintiff's assertion of breach of contract is inconsistent with his claim for duress. The gravamen of the Plaintiff's duress claim is that the terms of the 1995 Consolidated Loan (including capitalized interest) were unfair and should not have been enforced against him. Here, the Plaintiff is apparently asserting that the Defendants did not adhere to the terms of the 1995 Consolidated Loan—terms which he alleges elsewhere should not have been enforced.

[16] Even if the Plaintiff had properly alleged a breach of contract claim, his claim would be barred by his ratification. By his own admission, the Plaintiff made payments in accordance with the 1995 Consolidated Loan and requested deferments in accordance with that agreement. (Amend. Comp. ¶15). When he made these payments and accepted the deferment, the plaintiff ratified the terms of the 1995 Consolidated Loan—including the interest requirements. *See In re Boston Shipyard Corp.*, 886 F.2d 451, 455 (1st Cir. 1989) (holding that Plaintiff waived duress claim and ratified contract by accepting payments and acquiescing in contract).

Moreover, any such amendment would be futile given that the Plaintiff has not alleged facts giving rise to any actionable claim. *Demars v. General Dynamics Corp,* 779 F.2d 97, 99-100 (1st Cir. 1985)(affirming District Court's denial of leave to amend where amendment would have been futile).   In view of the numerous amendments and the futility of the claims, the Plaintiff should not be given leave to amend yet again or permitted to pursue these claims on remand in Massachusetts state court.

## CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that the Amended Complaint be dismissed with prejudice.

Dated: January 26, 2004

Respectfully submitted,

SLM CORPORATION, SALLIE MAE SERVICING L.P., NELLIE MAE, USA FUNDS, and GENERAL REVENUE CORPORATION,

By their attorneys,

Peter E. Gelhaar (BBO #188310)
Matthew N. Kane (BBO #636801)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
(617) 720-2880

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 1/26/04

20