
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIPP R. GIBBS,<br><br>    Plaintiff,<br><br>v.<br><br>SLM CORP., SALLIE MAE SERVICING, L.P.,<br>NELLIE MAE, USA FUNDS, GENERAL<br>REVENUE CORPORATION,<br><br>    Defendants. | CIVIL ACTION NO.<br>03-CV-12565-PBS |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Defendants SLM Corporation, Sallie Mae Servicing, L.P., Nellie Mae, USA Funds and General Revenue Corporation (collectively "the Defendants") hereby submit this reply brief to address several contentions in Plaintiff's Opposition to Defendants' Motion to Dismiss.

**I.    The Plaintiff's Reliance on Certain Federal Regulations Still Makes His Complaint Subject to Dismissal.**

In his Opposition Brief, the Plaintiff refers--for the first time--to the specific United States Department of Education regulations (contained in Title 34 to the Code of Federal Regulations) that he contends Defendants violated in the administration of his student loan. In particular, Plaintiff alleges that Defendants: (i) improperly capitalized interest on his student loan in violation of 34 C.F.R. §682.202 (b)(2); and (ii) improperly overcharged him $1,384.56 in collection costs in violation of 34 C.F.R. §682.401.

(Opposition Brief ("Opp. Br.") at 5, 6, 7, 17, 18; *see also* Opposition Brief Exhibit 7 "Opp. Exh. 7").

Plaintiff's articulation of these two theories in his Opposition Brief is important because virtually all of his claims are premised on these two points. For example, on occasion, Plaintiff attempts to state some claims directly under Title 34. (*See* Counts IV, IX). Elsewhere, he purports to allege violations of these regulations under the guise of common law claims. (*See* Counts II, V, VI, VII). Specifically, Plaintiff alleges that:

- Defendants breached the loan agreement by "illegally capitalizing interest on his student loan, contrary to Title 34 of the Code of Federal Regulations." Amend. Comp. ¶44);

- Defendants misrepresented the requirements of these regulations, and thereby fraudulently charged excessive interest (*Id.* ¶¶45, 46); and

- Defendants somehow caused Plaintiff to believe that interest charges would not accrue during periods of deferment. (*Id.* ¶38)

As set forth below, all of these claims must be dismissed. First, Plaintiff does not have any private right of action to assert claims arising under these regulations. Second, and perhaps more fundamentally, even taking the allegations as true, Defendant <u>still</u> did not violate the regulations upon which Plaintiff now relies.

### a. Plaintiff Does Not Have a Private Right of Action To Assert Claims Under These Regulations.

As a preliminary matter, Plaintiff does not have a private right of action--express or implied--to assert claims for alleged violations of Department of Education regulations. *L'ggrke v. Benkula*, 966 F.2d 1346, 1348 (10th Cir. 1992) (holding that there is no implied private right of action under the HEA for student borrowers); *see also Tripplet v. Johnson*, 976 F.2d 724 (Table), 1992 WL 240280 (1st Cir. 1992) (citing

*L'ggrke* and holding that "no private right of action is implied under the PELL Grant Program"). Accordingly, the Plaintiff's claims under Title 34 must be dismissed.

**b. Defendants Have Not, In Any Event, Violated the Subject Regulations.**

Even if Plaintiff could somehow establish that he has a private right of action (which he cannot), his claims still must be dismissed because Defendants' conduct, even as alleged by Plaintiff, did not violate the regulations contained in Title 34.

### (i) The Department of Education Regulations Expressly Permit the Defendants to Capitalize Accrued Interest.

First, Defendants properly capitalized accrued interest on Plaintiff's student loan in accordance with the Department of Education regulations. Indeed, the very regulation upon which Plaintiff relies expressly provides that "a lender *__may capitalize__* interest payable by the borrower that has accrued... [f]or a period of authorized deferment [or] for a period of authorized forbearance." 34 C.F.R. §682.202 (b)(2)(iii), (iv) (a copy of the regulation is attached hereto as Exhibit A) (emphasis supplied). Indeed, lenders frequently capitalize accrued interest where, as here, student loans are consolidated. *See, e.g., Ordaz v. Illinois Student Assistance Comm'n*, 287 B.R. 920 (C.D. Ill. 2002) (noting that a student's consolidated loan was created "to bring the delinquent loan current, *capitalize the accrued interest* and extend the term to 2013.") (emphasis supplied).

Contrary to Plaintiff's repeated assertions, the regulations do not require the debtor's consent before capitalizing accrued interest. Indeed, the regulations require consent only with respect to interest that accrued "for the in-school or grace periods, or for a period needed to align repayment of an SLS with a Stafford Loan." 34 C.F.R. §682.202(b)(2)(ii); *see also* 34 C.F.R. §682.200(b) (defining grace period). Here,

3

Plaintiff does not allege that interest was improperly capitalized when he was still in school or during any grace period. Instead, Plaintiff alleges that Defendants improperly capitalized interest by adding interest that accrued during periods of deferment and his subsequent default. (*See, e.g.,* Opp. Br. at 18). Defendants were entitled to capitalize interest that had accrued during this period <u>without</u> seeking Plaintiff's consent. 34 C.F.R. §682.202(b)(2)(iii), (iv).[1] Accordingly, his claims concerning any alleged improper capitalization of accrued interest must therefore be dismissed.

### (ii) The Regulation Concerning The Alleged Overcharges is Not Applicable To the Plaintiff.

Plaintiff also alleges that Defendants improperly charged him $1,384.56 in "penalties" over and above the limits set forth in the Department of Education regulations.[2] Plaintiff reaches this figure after concluding that "[t]he Dept. of Education limits the amount of penalty that can be added to a student loan to 18.5%." (Opp. Br. at 8). To support his argument, the Plaintiff attached a single page from an unidentified Department of Education publication that refers to 34 C.F.R. §682.401.[3]

Again, Plaintiff misreads the regulation. The regulation provides that the "basic agreement" between the Secretary of Education and any guaranty agency must limit collection costs to 18.5% of the outstanding principal and interest at the time when the

---

[1] The Promissory Note, referenced in the Amended Complaint and attached to the Opposition Brief as Exhibit 12A, contemplated that interest would be accrued during periods of deferment and late payments. Indeed, the Note expressly provided (and the Plaintiff agreed) that, in the event that Plaintiff failed to pay any amounts when they were due, he would "pay all charges and other costs… permitted by federal law and regulations for the collection of this loan…" (*See* Exh. 12A para. "Late Charges and Collection Costs"). Because the Promissory Note is subject to these regulations, the breach of contract claim must also be dismissed.

[2] In fact, these amounts are part of the $7,964.85 collection costs assessed to the Plaintiff's outstanding debt. (Opp. Exh. 9)

[3] A complete copy of the Department of Education publication was located on the Department's "Information for Financial Professionals" website (http://www.ifap.ed.gov), and is attached hereto as Exhibit B.

4

guaranty agency consolidates or pays off the student loan. 34 C.F.R. §682.401 (b)(27). This requirement is therefore limited to: (i) agreements between the Department of Education and guaranty agencies; (ii) at the time these loans are consolidated or paid off.[4] On its face, therefore, the regulation is clearly not applicable to Plaintiff; he is not a party to the "basic agreement" with the Department of Education, nor has any guaranty agency presented his loan for consolidation or pay-off following his August 18, 2000 default. Accordingly, any claims arising from 34 C.F.R. §682.401 for allegedly "excessive penalties" must be dismissed.[5]

## II. The Plaintiff May Not Maintain A Negligence Claim Against the Defendants Under the Fair Credit Reporting Act.

In his Opposition Brief, Plaintiff alleges that he has a private right of action to state a claim for negligent credit reporting under the Fair Credit Reporting Act ("FCRA"). (Opp. Br. at 10). The FCRA, however, places distinct obligations on only three types of entities: (i) consumer reporting agencies; (ii) users of consumer reports; and (iii) furnishers of information to consumer reporting agencies. *See Carney v. Experian Info. Solutions*, 57 F.Supp. 2d 496, 500 (W.D. Tex. 1999). Because Plaintiff's allegations are limited to the Defendants' alleged reporting of information to the credit

---

[4] The two exhibits submitted by Plaintiff only underscore the limited scope of this regulation. First, Exhibit 7 is a letter addressed to "Guaranty Agency Director" and not students. In addition, the letter is part of the Department's "Information for Financial Aid Professionals (IFAP) Library," providing guidance to financial aid professionals in their dealings with the Department of Education. Finally, the letter makes clear that the 18.5% limitation applies to these guaranty agencies "at the time the agency certifies the payoff amount on the loan to the consolidating lender." It is not a general requirement applicable to student loans. Second, Exhibit 6 is a letter that Plaintiff received from Education Debt Services, Inc. ("EDSI") in 2000. At that time, EDSI offered to limit their collection costs to 18.5% if Plaintiff consolidated his student loans. Plaintiff declined the offer. Having failed to take advantage of this offer, Plaintiff is barred from complaining that the collection costs on his student loan now exceed 18.5%.

[5] As an aside, Exhibit 9 to Plaintiff's Opposition Brief establishes that the Defendants' have charged the Plaintiff collection costs of approximately 18.5% of the outstanding principal and interest. As of September 16, 2003, the outstanding principal and interest amounted to $42,722.97. The collection costs were $7,964.85—18.64% of the outstanding principal and interest or only $61.10 above 18.5%.

5

reporting agencies (*see, e.g.*, Opp. Br. at 10), then Defendants may only be considered "furnishers of information" for purposes of the FCRA. *Carney*, 57 F. Supp.2d at 501. Indeed, Plaintiff does not (and cannot) contend that the Defendants are "consumer reporting agencies" or "users of consumer reports" as defined in the FCRA. *See, e.g.*, 15 U.S.C. §1681a(f).

As alleged "furnishers of information," Defendants have not run afoul of the two basic obligations set forth in 15 U.S.C. §1681s-2. *Akalgi v. Nationscredit Financial*, 196 F. Supp.2d 1186, 1192 (D. Kan. 2002)(holding that "furnishers of information" are subject to Section 1681s-2). First, subsection (a) of §1681s-2 provides that furnishers of credit information have a duty to provide consumer reporting agencies with accurate information. 15 U.S.C. §1681s-2(a). In all events, however, consumers do not have a private right of action under subsection (a). 15 U.S.C. §1681s-2(d) (providing for exclusive government enforcement).[6] Therefore, Plaintiff has no claim under 15 U.S.C. §1681s-2(a).

Second, subsection (b) of 15 U.S.C. §1681s-2 provides that furnishers of credit information must conduct an investigation after receiving notice from a credit reporting agency of a consumer dispute. While at least some courts have held that there is a private right of action under subsection (b),[7] any cause of action is "triggered *only* after the furnisher receives notice of the dispute *from a consumer reporting agency*, not just the

---

[6] *See also Hasvold v. First USA Bank*, 194 F. Supp. 2d 1228, 1235 (D. Wyo. 2002) (holding that there is no private right of action for violation of Section 1681s-2(a)); *Quigley v. Pennsylvania Higher Education Assistance Corp.*, 2000 WL 1721069, *2 (N. D. Cal. 2000)(same).

[7] *See, e.g., Aklagi*, 196 F. Supp.2d at 1193.

6

consumer." *Aklagi*, 196 F. Supp.2d at 1193 (emphasis in part in original).[8] Here, Plaintiff does not allege that Defendants received any such notice from any credit reporting agency. Instead, his allegations exclusively concern <u>his</u> complaints allegedly made to <u>Defendants</u>. That is not enough. *Carney*, 57 F. Supp. 2d at 502 (dismissing Section 1681s-2(b) claim where the "plaintiff ha[d] not alleged that a consumer reporting agency notified [the Defendants]").[9] Having failed to link Defendants to any notice from any credit reporting agencies, Plaintiff's claim necessarily fails.[10]

### III. Plaintiff's Remaining Claims Must Be Dismissed.

Plaintiff's remaining claims (Counts I and VIII) should likewise be dismissed:

- Plaintiff's duress claim—based on allegations arising eight years ago—is barred by the statute of limitations. In addition, Plaintiff admits that he has failed to allege the requisite facts <u>and</u> elements necessary to allege duress. (Opp. Br. at 15).

- Plaintiff's purported claim under the Federal Mail Fraud statute must be dismissed because there is no private right of action to enforce this criminal statute. 18 U.S.C §1345 (providing that the Attorney General alone has the authority to seek injunctive relief to stop mail fraud).[11]

---

[8] *See also Scott v. Amex Centurion S&T*, 2001 WL 1645362, *4 (N.D. Tex. 2001) ("The duties created by subsection (b) arise... only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information."); *Fino v. Key Bank*, 2001 WL 849700, *5 (W.D. Pa. 2001)(same); *Yelder v. Credit Bureau of Montgomery LLC*, 131 F. Supp. 2d 1275, 1289 (M.D. Ala. 2001) (same).

[9] *See also Aklagi*, 196 F. Supp. 2d at 1193 (dismissing FCRA claim because the Plaintiff "failed to make the critical link between the consumer reporting agencies and" the Defendant).

[10] Recognizing the problems with his FCRA claim, Plaintiff suggests that he can side-step the FCRA by simply bringing a new complaint in state court alleging violations of M.G.L. c. 93 §54A(a). He cannot. The exemption applies only to M.G.L. c. 93 §54A(a). It does not apply to the remainder of the statute— including the sections setting forth a private right of action and damages. *See* M.G.L. c. 93 §54A(g); M.G.L. c. 93 §64. "Thus, based on a plain reading of the FCRA, any private right of action under [the Massachusetts statute] based on the wrongful acts of a 'furnisher of information' is preempted by the FCRA." *Quigley*, 2000 WL 1721069 at *3 (holding that similar California statute—subject to the same exemption under the FCRA—was preempted). "Congress has legislated that only government officials may take action against furnishers of information to consumer reporting agencies; there is no private right of action under federal or state law against furnishers." *Id.*

[11] It is well-settled that there is no private right of action under the Federal Mail Fraud statute. *See, e.g.*, *(Cont'd...)*

7

### IV. Plaintiff Should Not Be Permitted to Amend His Complaint or to Pursue His Claims on Remand.

Recognizing the shortcomings in his Amended Complaint, Plaintiff repeatedly suggests that he will correct any deficiencies by making further amendments to his Amended Complaint in this action or, alternatively, by pursuing his claims (arising from the same set of facts) in the Massachusetts state courts. He should not be permitted to do either.

Plaintiff has already filed *five* complaints in this matter. In the January 7, 2004 Stipulation submitted to the Court, Plaintiff represented that he "[did] not intend to file any further amendments." More importantly, at the January 29, 2004 Scheduling Conference, Judge Saris expressly ordered that Plaintiff was barred from any further amendments. Plaintiff's "take-it-for-granted" attitude (*see* Opp. Br. at 15)-- that he possesses unlimited amendment opportunities-- is wholly inconsistent with Judge Saris's Order and should not be countenanced. At bottom, the Court has already indulged Plaintiff with *four* amendments and that is enough for any plaintiff-- even a pro se plaintiff. Justice, moreover, would not be served by permitting Plaintiff to file a *sixth* complaint in this matter. *Thomas v. Amerada Hess Corporation*, 393 F.Supp. 58, 78 (M.D. Pa. 1975)("Repeated failure to cure deficiencies by amendments previously allowed is sufficient reason for exercising discretion denying leave to amend further.").

---

*Swartz v. Schering-Plough Corp.*, 53 F.Supp.2d 95, 105 (D. Mass. 1999) ("While federal law criminalizes mail fraud, *see* 18 U.S.C. § 1341, it does not give rise to a private right of action.") The Plaintiff attempts to quarrel with this basic proposition—that a private citizen cannot bring claims arising under a criminal statute—by asserting that *Ryan v. Ohio Edison Co.*, 611 F.2d 1170 (6th Cir. 1979) was "overruled by the U.S. Supreme Court." (Opp. Br. at 1). In fact, *Ryan* remains good law. A copy of the Westlaw Keycite Report is attached hereto as Exhibit C.

In addition, Plaintiff suggests that he can avoid his defective pleadings by simply pursuing his claims in Massachusetts Superior Court. (Opp. Br. at 10, 17). This matter should not be remanded.

First, the meat of Plaintiff's common law claims arises from federally imposed duties. As set forth above, the misrepresentation, fraud, and breach of contract claims all arise from alleged violations of Title 34 of the Code of Federal Regulations. Similarly, Plaintiff's negligence claims are based on duties imposed by the Fair Credit Reporting Act and the Fair Debt Collection Practices Act. The First Circuit has not hesitated to affirm the District Court's refusal to remand state common law claims where the claims are based, in whole or part, on duties imposed by federal statutes and regulations. *BIW Deceived v. Local S6*, 132 F.3d 824 (1st Cir. 1997) (affirming District Court's denial of remand where plaintiff's negligence claim was based on duties imposed by federal statute).[12]

Second, candidly, Plaintiff threatens (literally) to subject Defendants to never-ending litigation. In his Opposition, he offers that he his "quite willing" to file another complaint in Barnstable Superior Court. (Opp. Br. at 10). Elsewhere, he suggests that he will simply file a "new case" if he is denied leave to amend his complaint. (Opp. Br. at 17). Plaintiff even threatens to contact the Federal Bureau of Investigation to create a "parallel expansion of their [alleged] investigation." (Opp. Br. at 18).[13] More recently, Plaintiff menacingly promised that "there are other legal avenues that are scheduled to be

---

[12] *See also Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998) (affirming District Court's denial of motion for remand where there were federal question claims arising from the "sophisticated regulatory web" created by the Higher Education Act and Department of Education regulations); *Rogers v. Flynn*, 2003 WL 1790851 (D. Mass., March 31, 2003)(allowing motion to dismiss and denying remand where plaintiff's allegations included both federal Constitutional and state law claims).

[13] Notwithstanding Plaintiff's claim, Defendants are not aware of any such investigation.

implemented." (*See* letter attached hereto as Exhibit D). In addition, he vowed to "open the floodgates of lawsuits that are going to be filed against your clients. Pandora's Box is just about to open." (See letter attached hereto as Exhibit E).

It is clear that Plaintiff has resolved to pursue this matter as vexatiously as he needs to, even though he conceded to the Court at the Scheduling Conference that the Defendants' alleged overcharges resulted in <u>under $2,000 of damages</u> to him. Again, we respectfully submit that the interest of justice would not be served by a remand to state court.

## CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth in Defendants' initial Motion to Dismiss and accompanying memorandum of law, Defendants request that the Amended Complaint be dismissed with prejudice.

Dated: March 2, 2004

Respectfully submitted,

SLM CORPORATION, SALLIE MAE SERVICING L.P., NELLIE MAE, USA FUNDS, and GENERAL REVENUE CORPORATION,

By their attorneys,

/s/ Matthew N. Kane

Peter E. Gelhaar (BBO #188310)
Matthew N. Kane (BBO #636801)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 720-2880

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand overnight

Date: 3/2/04  /s/ Matthew N. Kane

10