UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KIPP R. GIBBS,                           )
                                         )
              Plaintiff,                 )          CIVIL ACTION
      v.                                 )          NO. 03-12565-PBS
                                         )
SLM CORPORATION, et al.,                 )
                                         )
              Defendants.                )

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

August 2, 2004

DEIN, U.S.M.J.

## I.  INTRODUCTION

Pro se plaintiff, Kipp R. Gibbs ("Gibbs"), seeks to bring this action on his own

behalf and on behalf of other student loan borrowers against several defendants involved

in the lending or collection process challenging various transactions which have

transpired in connection with loans he obtained to fund his college education under the

Federal Family Education Loan Program.  This matter is presently before the court on the

"Defendants' Motion to Dismiss the Amended Complaint (1/5/04)" (Docket # 16).  For

the reasons detailed herein, this court recommends to the District Judge to whom this case

is assigned that the Motion to Dismiss be ALLOWED.[1]

---

[1]  The defendants seek dismissal with prejudice, as the Complaint has already been
amended a number of times since the suit was originally filed in state court.  However, this is the
first time a court has addressed the sufficiency of the pleadings, so, in this court's opinion, the fact
of prior amendments does not warrant a dismissal with prejudice.  This court does note, however,
that, as detailed herein, the amendment of most of the claims would be futile.

## II. <u>STATEMENT OF FACTS</u>

When ruling on a motion to dismiss, "a court assumes as true the plaintiff's 'well-pleaded factual averments' and favors the plaintiff with 'every reasonable inference.'" <u>Patterson v. Omnipoint Communications, Inc.</u>, 122 F. Supp. 2d 222, 226 (D. Mass. 2000) (internal citation omitted). Where, as here, the plaintiff is proceeding <u>pro</u> <u>se</u>, an even more liberal standard is applied. As the court explained in <u>Overton v. Torruella</u>, 183 F. Supp. 2d 295, 303 (D. Mass. 2001):

> On a motion to dismiss, the court must read a pro se plaintiff's allegations liberally and apply a less stringent standard to a pro se pleading than to a complaint drafted by counsel .... Nonetheless, pro se plaintiffs must comply with the applicable procedural and substantive rules of law, and dismissal remains appropriate when the court lacks jurisdiction over the claims or the parties and when the complaint fails to even suggest an actionable claim.

(citations omitted). Applying these standards to the instant case, the relevant facts are as follows:

The plaintiff, Gibbs, is a resident of the Commonwealth of Massachusetts. (Amended Complaint ("Compl.") (Docket # 5) ¶ 1). Prior to 1995, he took out several loans under the federally-sponsored Federal Family Education Loan Programs ("FFELP") to fund his college education. (Compl. ¶¶ 12-13; Defs.' Mem. (Docket # 17) at 1). In general terms, the loan program operates as follows:

## **The Loan Program**

In 1965, Congress passed the Higher Education Act of 1965, 20 U.S.C. §§ 1070, et seq. ("HEA"), in order to "'keep the college door open to all students of ability,'" regardless of socioeconomic background. Pelfrey v. Educ. Credit Mgmt. Corp., 71 F. Supp. 2d 1161, 1162-63 (N.D. Ala. 1999) (providing a detailed explanation of the loan program), aff'd (without op.), 208 F.3d 945 (11th Cir. 2000) (per curiam). "Under the HEA, eligible lenders make guaranteed loans on favorable terms to students or parents to help finance student education. The loans are typically guaranteed by guaranty agencies (state or private) and ultimately by the government." Id. at 1163. FFELP is one of the federally-sponsored loan programs authorized by the HEA. Id.

Under FFELP, participating lending institutions use their own funds to make loans to qualified borrowers, in this case Gibbs. See id. The loans are guaranteed by state or private agencies. See id.; see generally 20 U.S.C. §§ 1071, et seq. Here, it is alleged that the defendant USA Funds, a private, non-profit corporation, guaranteed the loans. (Compl. ¶ 5). It is alleged further that the defendant Nellie Mae (later acquired by defendant SLM Corp. in 1999) was responsible for "the processing and/or administration of student loans." (Id. ¶ 4). Sallie Mae Servicing, L.P. allegedly was "engaged in servicing student loans for national and state guarantee agencies for its own benefit and profit and the benefit and profit of SLM Corporation, its parent company, but is itself neither sponsored by nor an agency of the United States." (Id. ¶ 3). The defendant USA Funds "is a guarantor of student loans for national and state agencies" and "administers

-3-

and/or provides accounting for more than $37 billion dollars of student loans."  (Id. ¶ 5).

Finally, the defendant General Revenue Corporation ("GRC") "is a collection agency for

student loans and consumer loans" and "is the largest college and university-focused

collection agency in the country."  (Id. ¶ 6).[2]

### Gibbs' Loans

According to the Complaint, in 1995, Gibbs consolidated his student loans into

one consolidation note (the "Consolidated Loan").  (Id. ¶ 13).  He now contends that he

signed the Consolidated Loan under duress, and is challenging some of the terms of the

Loan.  (Id.).  Gibbs requested and received a deferment in 1996 (11/1/96 through

4/21/97).  (Id. ¶ 14).  He then made payments on the Consolidated Loan in a timely

manner until he received another deferment in 1998 (7/98 through 7/99).  (Id. ¶¶ 14-15).

In 1998, due to "a period of financial difficulty," Gibbs did not make payments on the

Consolidated Loan.  (Id. ¶ 16).  USA Funds put Gibbs' Loan in default on August 18,

2000.  (Id. ¶ 17).  According to Gibbs, in connection with the default, the defendants

---

[2] Due to disputed facts about the precise relationship between the defendant parties, the court will not address defendants' argument, raised in a footnote, that the defendant SLM Corp., commonly known as "Sallie Mae," should be dismissed as it is a parent corporation and, as such, is not liable for the acts of its subsidiaries.  (Defs.' Mem. at 3 n.3; see Pl.'s Opp. Mem. (Docket # 22) at 1-3).  The issue is not appropriate for a motion to dismiss at this time.  See also Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 61 n.17 (1st Cir. 1999) ("arguments raised only in a footnote or in a perfunctory manner are waived"), aff'd sub nom Crosby v. Nat'l Foreign Trade Counsel, 530 U.S. 363, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000).

applied an incorrect interest and penalty rate and made incorrect entries on his credit report, which he discovered on October 4, 2002. (<u>Id.</u> ¶¶ 18-20).[3]

Beginning in November, 2002, and continuing over several months, Gibbs was in communication with GRC, Nellie Mae, Sallie Mae Servicing, L.P. and USA Funds, first by phone, and then in writing, about the allegedly incorrect loan balance and credit reports. (<u>Id.</u> ¶¶ 21-36). However, his concerns were not addressed to his satisfaction. (<u>Id.</u> ¶¶ 29-32). At some point, GRC "attempted to coerce Mr. Gibbs to sign another promissory note, which would increase the principal that he owed and would extend the amount of time it remained on his credit." (<u>Id.</u> ¶ 24). The proposed arrangement would have increased Gibbs' principal balance from $27,531.11 to approximately $50,000. (<u>Id.</u> ¶ 33). By no later than August 18, 2003, Gibbs informed the defendants that he would file suit if the matter was not resolved. (<u>Id.</u> ¶ 29).

Gibbs' last communication with the defendants prior to suit was by fax dated November 17, 2003. (<u>Id.</u> ¶ 36). He then filed suit in Barnstable Superior Court on December 3, 2003 and then amended his complaint on December 4 and 9, 2003. (Defs.' Mem. at 5). The case was removed to this court on December 19, 2003, and the plaintiff amended his complaint once again on December 23, 2003. (<u>Id.</u>; Docket ## 1, 4). On January 5, 2004, the plaintiff filed the Amended Complaint which is the subject of the

---

[3] Plaintiff contends that the reference to October 4, 1992 in ¶ 20 of the Complaint is clearly a typographical error and that the correct date is 2002. (<u>See</u> Pl.'s Opp. Mem. at 10). Since the loan did not go into default until 2000, the 1992 reference does not make sense, and the court will use the corrected date.

instant Motion to Dismiss.  (Docket # 5).  Gibbs is seeking billions of dollars in class-

wide damages.  (E.g., Compl. ¶ 38(b)).

The relevant Complaint sounds in nine Counts, all of which are alleged against all

of the defendants without distinction.  These Counts are as follows:

> Count I:  defendants coerced "plaintiff to sign a new consolidation loan under duress, which significantly increased both the principal owed, the rate at which interest accrues and the amount of time that negative credit appears on his credit report."  (Id. ¶ 37).
>
> Count II:  misrepresentations in connection with the terms of the 1995 Consolidated Loan.  (Id. ¶ 38).
>
> Count III:  negligently reporting to credit bureaus and failure to train employees regarding credit collection practices under the Fair Debt Collection Practices Act, 15 U.S.C. § 1601.  (Id. ¶ 39).
>
> Count IV:  wrongful overcharging of $939.79 in interest in violation of 34 C.F.R.  (Id. ¶ 43).
>
> Count V:  breach of contract by overcharging interest.  (Id. ¶ 44).
>
> Count VI:  conspiracy to defraud students by purposefully over-charging their accounts.  (Id. ¶ 45).
>
> Count VII:  fraud by way of a plan to charge excess interest.  (Id. ¶ 46).
>
> Count VIII:  mail fraud in violation of 18 U.S.C. § 1341.  (Id. ¶ 47).
>
> Count IX:  violation of Department of Education ("DOE") regu-lations found in 34 C.F.R. by illegally augmenting penalties, resulting in an overcharge of $1,384.56 to Gibbs' account.  (Id. ¶¶ 48-49).

# III.  DISCUSSION

## A.    Standard of Review

Defendants have moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted."  This court may grant such a motion "only if it appears that upon any set of facts which may be inferred from the complaint the plaintiff will be unable to recover."  Danio v. Emerson Coll., 963 F. Supp. 61, 62 (D. Mass. 1997) (citing Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996)). "The complaint will survive as long as it pleads sufficient facts to warrant recovery on any cognizable theory of the case."  Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 93 (1st Cir. 2000) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)).

Although minimal, the pleading requirements at this stage "are not tantamount to nonexistent requirements."  Cooperman v. Individual, Inc., 171 F.3d 43, 47 (1st Cir. 1999) (internal citation and quotation omitted).  Therefore, a "reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions."  Am. Tel. & Tel. Co. v. IMR Capital Corp., 888 F. Supp. 221, 251-52 (D. Mass. 1995) (internal citation and quotation omitted).  A complaint cannot withstand a motion to dismiss if the plaintiff fails to "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Cooperman v. Individual, Inc., 171 F.3d at 47 (internal

citation and quotation omitted). "If it clearly appears that a plaintiff could not recover on any viable theory, dismissal is proper." <u>Patterson v. Omnipoint</u>, 122 F. Supp. 2d at 226 (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 48, 78 S. Ct. 99, 101, 103, 2 L. Ed. 2d 80 (1957)). Applying these principles to the instant case requires that the Motion to Dismiss be allowed.

### B.    <u>Count I: Duress</u>

In Count I of the Complaint, Gibbs has alleged that he signed the 1995 Consolidated Loan under duress. "Coercion sufficient to avoid a contract need not . . . consist of physical force or threats of it. Social or economic pressure illegally or immorally applied may be sufficient." <u>Int'l Underwater Contractors, Inc. v. N.E. Tel. & Tel. Co.</u>, 8 Mass. App. Ct. 340, 342, 393 N.E.2d 968, 970 (1979) (internal citation and quotation omitted). To prevail on a claim of economic duress, a party must establish "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." <u>Id.</u>, 393 N.E.2d at 970 (internal citation and quotation omitted). "Not only must there be a wrongful or improper act or threat, but the act or threat must overcome the party's desire and undermine the agreement." <u>Delaney v. Chief of Police of Wareham</u>, 27 Mass. App. Ct. 398, 407, 539 N.E.2d 65, 70, and cases cited, <u>review</u> <u>denied</u>, 405 Mass. 1204, 542 N.E.2d 602 (1989). "Moreover, absent compelling circumstances, the availability of a reasonable alternative, such as a legal or administrative remedy, will

defeat a claim of duress." <u>Delaney v. Chief of Police of Wareham</u>, 27 Mass. App. Ct. at 407, 542 N.E.2d at 70, and authorities cited.

Gibbs admits that he has failed to allege the elements of a claim of duress. (Pl.'s Opp. Mem. at 15). Nevertheless, he has requested leave to file an additional amended complaint. This court, however, recommends that Gibbs' claim for duress be dismissed with prejudice, as it is not timely and an amendment would be futile. <u>See</u> <u>Demars v. General Dynamics Corp.</u>, 779 F.2d 95, 99 (1st Cir. 1985) (motion to amend may be denied if amendment would be futile). The Consolidated Loan was executed in 1995, but suit was not brought until 2003. Thus, whether the 3-year tort statute of limitations applies as the defendants' contend, or the 6-year contract statute of limitations applies as the plaintiff contends, the suit was not filed in a timely manner.

Furthermore, Gibbs performed under the Consolidated Loan agreement, and accepted the benefits thereof by making loan payments and obtaining two periods of deferment. As the court held in <u>Beaconsfield Townhouse Condominium Trust v. Zussman</u>, 49 Mass. App. Ct. 757, 763, 733 N.E.2d 141, 146, <u>review</u> <u>denied</u>, 432 Mass. 1109, 738 N.E.2d 750 (2000):

> To repudiate an agreement on the ground that it had been made under duress, a party must complain promptly of the coercive statements that it claims had forced it into the contract. Silence, acquiescence, or performance of the contract are among the ways in which the defense of duress is waived, or, to put it another way, to ratify the contract claimed to have been entered into under duress.

Since Gibbs' claim of duress is barred by the statute of limitations and his own Complaint establishes that he ratified the agreement, the Motion to Dismiss Count I should be allowed, and the claim should be dismissed with prejudice.

### C.    <u>Counts II, VI & VII - Fraud</u>

Gibbs has brought three Counts alleging fraud against all of the defendants. Specifically, in Count II, Gibbs contends:

> Defendants misrepresented his rights under the consolidation loan by leading him to believe that they would remain unchanged. When, in fact, during periods of deferment, the government would no longer pay interest charges. Plaintiff's previous loans did provide such protection. This was fraud in the inducement and fraudulent misrepresentation.

(Compl. ¶ 38). In Count VI, Gibbs alleges:

> The attorney for Sallie Mae, David Stocker, stated that they are aware of this charge and implemented it as required by law. This statement by the Defendant's attorney is false. Defendants conspired to defraud (conspiracy to defraud) students by purposefully overcharging their accounts.

(<u>Id.</u> ¶ 45). "This charge" apparently relates to the interest charge which Gibbs contends the defendants were wrongfully capitalizing. (<u>See</u>, <u>e.g.</u>, <u>id.</u> ¶ 43). In opposing the Motion to Dismiss, Gibbs has asserted that the statement at issue was made on December 18, 2003. (Pl.'s Opp. Mem. at 16).

Finally, in Count VII, Gibbs asserts:

> Fraud. The Defendants carrying out of their plan to charge excessive interest was fraudulent.

-10-

(Compl. ¶ 46). For the detailed below, this court finds that these pleadings are insuffi-

cient to state claims of fraud and recommends that they be dismissed.

The pleading requirements for a claim of fraudulent misrepresentation are well

established. Thus, as the court recently summarized in <u>Johnson v. Brown & Williamson</u>

<u>Tobacco Corp.</u>, 122 F. Supp. 2d 194, 207 (D. Mass. 2000):

> To survive a motion to dismiss under Massachusetts law, a plaintiff
> claiming fraudulent misrepresentation must allege that the defendant
> 1) made a false representation of material fact, 2) with knowledge of
> its falsity, 3) for the purpose of inducing the plaintiff to act thereon,
> and 4) that the plaintiff relied upon the statement to his or her
> detriment .... Moreover, Fed. R. Civ. P. 9(b) mandates that fraud
> claims be pled with particularity. The First Circuit has interpreted
> Rule 9(b) to require "specification of the time, place, and content of
> an alleged false representation ...." ... Further, although a plaintiff's
> pleadings are afforded substantial deference in reviewing a motion to
> dismiss, "each general allegation must be supported by a specific
> factual basis" and a court need not credit unsubstantiated conclu-
> sions or subjective characterizations.

(internal citations omitted). <u>See</u> <u>also</u> <u>Suna v. Bailey Corp.</u>, 107 F.3d 64, 68 (1ˢᵗ Cir. 1997)

(to satisfy pleading requirements of Fed. R. Civ. P. 9(b), the complaint must "(1) specify

the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements

were fraudulent." (internal citation and quotion omitted)). Gibbs' Complaint fails to

meet these pleading requirements.

With respect to Count II (Compl. ¶ 38), the contention that the Consolidated

Loan's terms were unchanged from the prior loans and that there was a failure to disclose

that the government would not pay interest charges during periods of deferment, Gibbs

has failed to identify who made the statements, when or where they were made, or that he acted in reliance on the statements. These shortcomings, in and of themselves, require the dismissal of Count II.

Dismissal is also appropriate because this Count is clearly time-barred. The Consolidated Loan was executed in 1995. Therefore, for plaintiff to have relied on any alleged misrepresentation about the terms of said Loan, they had to have been made prior to 1995. The plaintiff obtained a deferment from November 1, 1996 through April 21, 1997 during which time the government presumably failed to make the interest payments which Gibbs contends were required. Thus, by no later than April, 1997, Gibbs knew or should have known that the representation that the terms of the Consolidated Loan remained unchanged from prior loans was false. Since suit was not brought until 2003, well beyond the 3-year statute of limitations for tort claims, Count II is time-barred.

The pleading relating to Attorney Stocker's alleged statement in Count VI (Compl. ¶ 45) is also deficient — the Complaint does not state when or where the statement was made or what rendered it fraudulent. Moreover, as a matter of law, Gibbs cannot premise his fraud claim on this statement. According to Gibbs, the statement was made on December 18, 2003, just days before suit was filed. As Gibbs admits, he could not have relied on this statement in entering into the Consolidated Loan or in connection with any of his other actions. (See Pl.'s Opp. Mem. at 16 (plaintiff "surely could not have relied and acted upon a statement made in December of 2003")). Absent reliance, Gibbs cannot maintain a claim for fraud. See Johnson v. Brown & Williamson Tobacco Corp., 122 F.

Supp. 2d at 207-08 (complaint fails to state a claim for fraud where there is a failure to plead reliance on specific false material statements).

Finally, Count VII, alleging a "plan to charge excessive interest" (Compl. ¶ 46), is absolutely devoid of factual underpinnings to support either a simple claim of fraud, or "a larger conspiracy to defraud" Gibbs. <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 194 (1st Cir. 1996) (general allegations of wrongdoing insufficient to state a claim of conspiracy to defraud). Gibbs has not even identified which defendants were involved in the alleged plan, much less their role therein. Given the absolute lack of any allegations to support the existence of a plan or of fraud, this court recommends that Count VII be dismissed as well.

### D.    <u>Count III - Negligence</u>

In Count III, Gibbs raises two negligence-based claims. First, he contends that the "Defendants engaged in negligent and tortious reporting to credit bureaus[.]" (Compl. ¶ 39(a)). As detailed herein, whether this claim is construed as a claim under the Fair Credit Reporting Act or common law, this Count fails to state an actionable claim. Second, Gibbs contends that the defendants engaged in "[n]egligent hiring, training and supervision" vis-à-vis credit collection practices under the Fair Debt Collection Practices Act ("FDCPA"). (Compl. ¶ 39(b)). This claim, too, must be dismissed as it fails to state a private cause of action.

1.    <u>**Negligent Reporting - FCRA**</u>

Gibbs' complaint about reports made to credit bureaus is covered by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, <u>et</u> <u>seq.</u> ("FCRA"). "There are essentially three types of actors which interplay in suits under the FCRA, namely 1) consumer reporting agencies, 2) users of consumer reports, and 3) the furnishers of information to consumer reporting agencies." <u>Vazquez-Garcia v. Trans Union De Puerto Rico</u>, 222 F. Supp. 2d 150, 153-54 (D.P.R. 2002). In the instant case, the defendants are "furnishers of information," and their responsibilities in connection with providing information to consumer reporting agencies are governed by 15 U.S.C. § 1681s-2, a section that "identifies two duties imposed upon such furnishers of information: the duty to provide accurate information [§ 1681s-2(a)] and the duty to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency [§ 1681s-2(b)]." <u>Carney v. Experian Info. Solutions, Inc.</u>, 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999). Specifically, § 1681s-2 provides in relevant part[4]:

> (a)    **Duty of furnishers of information to provide accurate information**
>
> **(1)  Prohibition**
>
> **(A)  Reporting information with actual knowledge of errors.**

---

[4] For convenience, this court will cite to the most current version of this statute as amended by Pub. L. 108-159, § 3, Title III, § 312(b), Dec. 4, 2003, 117 Stat. 1953. The amendments over the time period covered by Gibbs' Complaint have not changed the substance of the relevant provisions.

> A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.
>
> * * *
>
> **(b)    Duties of furnishers of information upon notice of dispute**
>
> **(1)  In general**
>
> After receiving notice pursuant to section 1681i(a)(2) of this title [providing for notice by a consumer reporting agency] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall -
>
> (A)  conduct an investigation with respect to the disputed information....

Pursuant to 15 U.S.C. §§ 1681s-2(c)(1) and 1681s-2(d), enforcement of violations of § 1681s-2(a) is limited exclusively to designated state and federal officials.  Conse-quently, courts have consistently held that there is no private action for violations of § 1681s-2(a).  See, e.g., Aklagi v. Nationscredit Fin. Servs. Corp., 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002), and cases cited; Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d at 502.  Therefore, to the extent that Gibbs has purported to state a claim challenging the provision of inaccurate information under 15 U.S.C. § 1681s-2(a), that claim must be dismissed as there is no private right of action.

While there is not unanimity on the issue, "[t]he majority of courts that have considered the issue" have concluded that there is a private cause of action under § 1681s-2(b) as there is no statutory ban on such a claim.  Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 1010 (S.D. Iowa 2003), and cases cited.  Accord Sheffer v.

Experian Info. Solutions, Inc., 249 F. Supp. 2d 560, 562 (E.D. Pa. 2003), and cases cited.

However, § 2(b) relates to a provider of information's response to a notice of a dispute

from a credit reporting agency.  Therefore, courts have "uniformly" concluded that § 2(b)

"provides a private cause of action only if the furnisher received notice from a consumer

reporting agency, as opposed to the plaintiff alone, that the credit information was

disputed."  Aklagi v. Nationscredit Fin. Servs. Corp., 196 F. Supp. 2d at 1193 (citing,

inter alia, Hasvold v. First USA Bank, N.A., 194 F. Supp. 2d 1228, 1236 (D. Wyo.

2002)).  In the instant case, Gibbs has not alleged that he contacted any credit reporting

agency or that the agency, in turn, got in touch with any of the defendants.  Under such

circumstances, a complaint brought under § 2(b) should be dismissed.[5]  See Carney v.

Experian Info. Solutions, Inc., 57 F. Supp. 2d at 502 (complaint fails to state a claim

under 15 U.S.C. § 1681s-2(b) absent any allegation that a consumer reporting agency

notified the defendant of a dispute).

## 2.    Negligent Reporting - Common Law

To the extent that Gibbs is alleging a common law claim of negligence, such a

claim is precluded due to two preemption provisions of the FCRA.  There is a general

preemption provision found in 15 U.S.C. § 1681t(b)(1)(F) and a more specific provision

---

[5]  While Gibbs contends that facts exist which establish that there were communications with credit reporting agencies (Pl.'s Reply Opp. (Docket # 29) at 7), such facts are not included in the complaint and cannot be considered in connection with the Motion to Dismiss.  See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (complaint cannot be amended through statements in briefs), and cases cited, cert. denied, 525 U.S. 1104, 119 S. Ct. 870, 142 L. Ed. 2d 772 (1999).

found in § 1681h(e).  See Gordon v. Greenpoint Credit, 266 F. Supp. 2d at 1012.  Courts

have engaged in extensive analyses to determine which of these provisions apply in any

given case.  See id. at 1012-13, and cases cited.  Such an examination is not necessary in

the instant case, however, as Gibbs has failed to state a claim under either statute.

      15 U.S.C. § 1681h(e) provides in part, with exceptions not here applicable, that

"no consumer may bring any action or proceeding in the nature of defamation, invasion

of privacy, or negligence with respect to the reporting of information against . . . any

person who furnishes information to a consumer reporting agency . . . except as to false

information furnished with malice or willful intent to injure such consumer."[6]  Where, as

here, the plaintiff has failed to allege that the information was furnished "with malice or

willful intent to injure," the complaint fails to state a claim and should be dismissed.  See,

e.g., Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir.) (§ 1681h(e) provides that "no

defamation or like actions are allowed under the Act unless malice or willful intent is

alleged"), cert. denied, 449 U.S. 835, 101 S. Ct. 108, 66 L. Ed. 2d 41 (1980); Yeager v.

TRW Inc., 984 F. Supp. 517, 522, 524 (E.D. Tex. 1997) (summary judgment granted on

claims for which defendant lacked the requisite intent and did not act with "malice or

willful intent"); Mitchell v. Surety Acceptance Corp., 838 F. Supp. 497, 501 (D. Colo.

---

     [6]  The provision applies to the reporting of information required by law.  15 U.S.C.
§ 1681h(e).  In the instant case, the defendants' are required to report information pursuant to 20
U.S.C. § 1080(a).

1993) ("No defamation [or negligence] action is allowed under the FCRA unless it is alleged the defendant acted with malice or a willful intent to injure the plaintiff.").

Various courts have held that the specific preemption provision of § 1681h(e) relating to negligence claims should apply in cases such as the instant one involving a claim of common law negligence. See, e.g., Gordon v. Greenpoint Credit, 266 F. Supp. 2d at 1013. Nevertheless, even if only the general preemption section was deemed to apply, Gibbs' Complaint would still fail.

15 U.S.C. § 1681t(b)(1)(F) provides in relevant part:

> No requirement or prohibition may be imposed under the laws of any State —
>
> (1) with respect to any subject matter regulated under — ...
>
> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply —
>
> (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
>
> (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996) ....

This section has been called "the absolute immunity provision" which, if applicable, bars any state law claim based on conduct which is governed by § 1681s-2. Aklagi v. Nationscredit Fin. Servs., 196 F. Supp. 2d at 1194.

Gibbs contends that the exception for Mass. Gen. Laws ch. 93, § 54A(a) renders the absolute immunity provision inapplicable here. Section 54A(a) provides that:

> (a) Every person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the infor-

> mation reported to a consumer reporting agency is accurate and
> complete.  No person may provide information to a consumer
> reporting agency if such person knows or has reasonable cause to
> believe such information is not accurate or complete.

The FCRA, however, did not exempt from its provisions Mass. Gen. Laws ch. 93,

§ 54A(g), which creates a cause of action for providing false information.  As that section

provides:

> (g)  A person who furnishes information to a consumer reporting
> agency shall be liable for failure to comply with the provisions of
> this section, unless the person so furnishing the information estab-
> lishes by a preponderance of the evidence that, at the time of the
> failure to comply with this section, such person maintained
> reasonable procedures to comply with such provisions.

Where, as here, the FCRA does not exempt the state law provision expressly authorizing

a private cause of action, such private causes of action remain preempted.  See Hasvold v.

First USA Bank, N.A., 194 F. Supp. 2d at 1235 (addressing comparable California Civil

Code § 1785.25(a) and (g)).

　　　　For all these reasons, ¶ 39(a) in Count III of the Complaint fails to state a claim of

negligence under either the FCRA or common law, and, therefore, should be dismissed.

### 3.　　Negligent Supervision

　　　　In the second part of Count III (Compl. ¶ 39(b)), Gibbs claims that the defendants

are liable for negligent hiring, training and supervising under the FDCPA, 15 U.S.C.

§§ 1692, et seq.[7]  It is well established, however, that the FDCPA has no application

---

[7]  Although the plaintiff cites the Fair Debt Collection Practices Act as 15 U.S.C. § 1601,
debt collection practices are actually governed by §§ 1692, et seq.

where the loan was obtained before the borrower was in default.  As that is the situation here, the remainder of Count III should also be dismissed.  (See Compl. ¶¶ 13, 17 - Consolidated Loan executed by defendants in 1995, but not put in default until August 18, 2000).

"To trigger the protections of the [FDCPA], the funds at issue must constitute a debt, and the challenged activity must be conducted by a party that falls within the statutory definition of a 'debt collector.'"  Skerry v. Mass. Higher Educ. Assistance Corp., 73 F. Supp. 2d 47, 51 (D. Mass. 1999).  Student loans under the Higher Education Act qualify as debts under the statute.  See id. at 50 n.1, 51.  However, 15 U.S.C. § 1692a(6)(F)(iii) excludes from the definition of "debt collector" any person (or entity) collecting or attempting to collect "a debt which was not in default at the time it was obtained by such person."  Thus, the defendants are not debt collectors under the FDCPA, and the balance of Count III should be dismissed.  See Skerry v. Mass. Higher Educ. Assistance Corp., 73 F. Supp. 2d at 56.

**E.    Counts IV and IX - Violation of Higher Education Act Regulations**

In Count IV of his Complaint, Gibbs alleges that the defendants violated the regulations found in 34 C.F.R. § 682.202(b)(2) by illegally capitalizing interest on his student loan (Compl. ¶ 43), and in Count IX he contends that they violated regulations found in 34 C.F.R. § 682.401 by improperly charging him collection costs.  (Compl.

-20-

¶ 49).[8]  Because there is no private right of action to enforce these regulations, these

Counts should be dismissed.[9]

As detailed above, Gibbs' loans were made pursuant to the Federal Family

Education Loan Program established by the Higher Education Act of 1965, 20 U.S.C.

§§ 1701, et seq.  The HEA does not expressly provide for a private cause of action, but,

rather, "only provides for a suit brought by or against the Secretary of Education.  20

U.S.C. § 1082(a)(2).  Indeed, the HEA provides an enforcement scheme which gives the

Secretary of Education wide-ranging regulatory authority to enforce the provisions of the

HEA."  McCulloch v. PNC Bank Inc., 298 F.3d 1217, 1221 (11th Cir. 2002) (per curiam)

(citing 20 U.S.C. §§ 1070(b), 1071, 1082, 1094; 34 C.F.R. §§ 668.84-.98).  Although the

First Circuit has not addressed the issue, "nearly every court to consider the issue in the

last twenty-five years has determined that there is no express or implied private right of

action to enforce any of the HEA's provisions."  McCulloch v. PNC Bank Inc., 298 F.3d

at 1221, and cases cited.  For the reasons addressed only briefly herein, and detailed more

fully in McCulloch and cases cited therein, this court is of the opinion that the First

---

[8]  The Complaint itself is silent as to the specific regulations at issue, although they are identified by the parties in their briefs.  (E.g., Defs.' Reply (Docket # 27) at 1).

[9]  Since the court concludes that there is no private cause of action under 34 C.F.R., it will not address the defendants' claim that they did not violate the regulations.  The facts regarding the actions taken by the defendants are not fully developed in the Complaint and, in this court's opinion, if the claims are not dismissed for lack of a private cause of action, it would be premature to rule on the merits of the plaintiff's claims at this time.

Circuit would also conclude that there is no private cause of action, and that, as a result,

Counts IV and IX of the Complaint should be dismissed.

"[T]he fact that a federal statute has been violated and some person harmed does

not automatically give rise to a private cause of action in favor of that person." Cannon

v. Univ. of Chicago, 441 U.S. 677, 688, 99 S. Ct. 1946, 1953, 60 L. Ed. 2d 560 (1979).

> In determining whether a private right of action is implied under a
> federal statute, four factors are considered: (1) whether the plaintiff
> is one of the class for whose especial benefit the statute was enacted;
> (2) whether there is any indication of legislative intent, explicit or
> implicit, either to create such a remedy or to deny one; (3) whether it
> is consistent with the underlying purposes of the legislative scheme
> to imply a private right of action; and (4) whether the cause of action
> is one traditionally relegated to state law, in an area basically the
> concern of the States, so that it would be inappropriate to infer a
> cause of action based solely on federal law. Cort v. Ash, 422 U.S.
> 66, 78, 95 S. Ct. 2080, 2087, 45 L. Ed. 2d 26 (1975). These four
> factors are not granted equal weight, but rather the second and third
> factors are generally relied upon more heavily in deciding whether to
> infer a private cause of action.

L'ggrke v. Benkula, 966 F.2d 1346, 1347 (10th Cir. 1992), and cases cited. The Court in

recent years has applied "a stricter standard for the implication of private causes of

action" although the "central inquiry remains whether Congress intended to create, either

expressly or by implication, a private cause of action." Touche Ross & Co. v. Redington,

442 U.S. 560, 575, 578, 99 S. Ct. 2479, 2489, 2490, 61 L. Ed. 2d 82 (1979). Accord

Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 24, 100 S. Ct. 242, 249, 61

L. Ed. 2d 146 (1979) (the dispositive question is whether Congress intended to create a

private right of action).

In the instant case, it is undisputed that "Congress intended for the HEA to benefit students" and, thus, that Gibbs is a member of the class the statute was intended to benefit. McCulloch v. PNC Bank Inc., 298 F.3d at 1222. But see note 10, infra. However, the legislative history of the HEA does not contain any indication that Congress intended to create a private cause of action. Rather, the "detailed regulatory scheme which confers on the Secretary of Education the exclusive authority to monitor and enforce the provisions of the HEA" compels the conclusion "that Congress did not intend to create a private right of action, but rather provided precisely the remedies it considered appropriate." Id. at 1222-23, 1225 (parents' suit under HEA against lenders and marketers of student loans dismissed as there is no private right of action under the statute). As the court held in L'ggrke v. Benula, when dismissing a student's suit against a school relating to the disbursement of student loan proceeds:

> The express language of the Higher Education Act, and the regulations promulgated thereunder, does not create a private cause of action, and there is nothing in the Act's language, structure or legislative history from which a congressional intent to provide such a remedy can be implied. No provision provides for student enforce-ment or entitlement to civil damages. Rather, ... Congress vested exclusive enforcement authority in the Secretary of Education. To imply a private right on the part of a student would conflict with the enforcement powers of the Secretary and thus would be inconsistent with the underlying purpose of the statute.

966 F.2d at 1348, and cases cited.

Gibbs relies on De Jesus Chavez v. LTV Aerospace Corp., 412 F. Supp. 4 (N.D. Tex. 1976), which is "the only decision finding any private cause of action" under the

-23-

HEA.  Hudson v. Academy of Court Reporting, Inc., 746 F. Supp. 718, 721 (S.D. Ohio

1990) (court declines to follow De Jesus Chavez and finds that student borrowers do not

have a private right of action under the HEA).[10]  In De Jesus Chavez, the court relied on

the absence of "an explicit congressional purpose to deny the plaintiff her cause of

action" to find a congressional intention to create a cause of action.  412 F. Supp. at 6-7.

However, De Jesus Chavez was decided before Touche Ross & Co. v. Redington, where

the Supreme Court explicitly rejected the argument that a private cause of action could be

implied by congressional silence.  442 U.S. at 571, 99 S. Ct. at 2486.  Rather, Touche

Ross directs that the fact that Congress is silent is further evidence that a private cause of

action does not exist.  Id.  This court agrees with the McCulloch court that De Jesus

Chavez does not survive Touche Ross "which requires some affirmative evidence of

congressional intent to create a private right of action, and not just a lack of congressional

intent to deny a cause of action."  McCulloch v. PNC Bank Inc., 298 F.3d at 1224.

---

[10]  In Hudson, the court's analysis, which is not generally followed, involved "scrutinizing and analyzing the specific relevant code section, statute or regulation to determine whether such a private cause of action is implied," as opposed to looking at the act or regulatory scheme as a whole.  746 F. Supp. at 721.  In Hudson, the court found no private right of action to enforce 34 C.F.R. § 682.604(d) which dictates how loan proceeds are to be applied, since the purpose of the regulation "was to protect the government and the lending institution from the misapplication of the loan proceeds" and not to benefit students in particular.  Id.  However, even under Hudson's "regulation by regulation" analysis, Gibbs' action would fail since there is no evidence that the specific regulations he is seeking to enforce relating to loan charges were intended to benefit the borrowers, as opposed to the government and the lending institutions by ensuring the integrity and continued viability of the loan program.  See generally Brannan v. United Student Aid Funds, Inc., 94 F.3d 1260, 1264-66 (9th Cir. 1996) (a major purpose of the HEA is to stabilize student loan program and cut government losses due to default), cert. denied, 521 U.S. 1106, 117 S. Ct. 2484, 138 L. Ed. 2d 992 (1997).

In sum, there is no private right of action to enforce the regulations enacted under the HEA. Consequently, this court recommends that Counts IV and IX of the Complaint be dismissed.

### F.     Count V - Breach of Contract

In Count V, Gibbs alleges simply that "[t]he overcharge of interest is a breach of contract by the Defendants." (Compl. ¶ 44). The amount of the overcharges on Gibbs' loan is $939.79. (Compl. ¶¶ 44(a), 43). For the reasons that follow, this Count fails to state a claim and should be dismissed.

As an initial mater, the Complaint is devoid of any details about the alleged breach of contract. No contract provision is identified, nor are the dates the charges were assessed defined. In addition, the specific parties to the contract are not identified. Failure to plead the elements of a breach of contract claim warrant dismissal of this count. See, e.g., Mass Cash Register, Inc. v. Comtrex Sys. Corp., 901 F. Supp. 404, 415 (D. Mass. 1995) (to prevail on a breach of contract claim, "the plaintiff must prove the existence of a valid binding agreement, the defendant's breach thereof, and damages resulting from the breach").

Moreover, the precise nature of the breach of contract is undefined. To the extent that Gibbs is complaining that the defendants acted in violation of the regulations found in 34 C.F.R. governing the appropriate amount of interest and penalties which can be charged, for the reasons detailed in the preceding section, there is no private cause of action available. Gibbs cannot circumvent the statutory and regulatory scheme by calling

his claim a breach of contract.  Cf. McCulloch v. PNC Bank Inc., 298 F.3d at 1226-27

(since HEA does not contain a private right of action, court dismisses claims which were

"nothing more than purported HEA violations pled in RICO terms" because to hold

otherwise would allow plaintiffs to "circumvent the HEA's administrative remedies by

'packaging' their HEA claim as a RICO claim"); Saenger Org., Inc. v. Nationwide Ins.

Licensing Assoc., Inc., 119 F.3d 55, 64 n.2 (1st Cir. 1997) (court notes that if a plaintiff

could bring a state law breach of contract claim otherwise preempted by the Copyright

Act based on an "artful restructuring of the copyright claim," purpose of Copyright Act

would be "substantially, if not, totally undermined") (internal citation and quotation

omitted).

Similarly, if Gibbs is in fact complaining that the terms of the Consolidated Loan

differed from those he had agreed to in 1995, that claim is time-barred.  As detailed in

connection with the discussion of Gibbs' fraud claim, the government would have

improperly, according to Gibbs, failed to pay interest charges during the first deferment

period of November 1, 1996 through April 21, 1997.  (Compl. ¶ 38).  "Under Massa-

chusetts law, an action for breach of contract generally accrues at the time of breach,

thereby triggering the statute of limitations for purposes of determining whether a claim is

time-barred."  Id. at 64, and cases cited.  Nevertheless, suit was not brought until

December, 2003, beyond the six-year statute of limitations.

In sum, the lack of any details of Gibbs' contract claim warrants the dismissal of Count V.  Furthermore, it appears that his breach of contract claim may be preempted by federal law or time-barred.

### G.    <u>Count VIII - Mail Fraud</u>

In Count VIII of his Complaint, Gibbs contends that "[t]he Defendants committed numerous counts of Federal Mail Fraud in violation of federal statute 18 U.S.C. § 1341 by sending lulling letters designed to prevent students from seeking justifiable and equitable relief in a court of law."  (Compl. ¶ 47).  It is well established that there is no private cause of action under the mail fraud statute which is "a bare criminal statute with no indication of any intent to create a private cause of action, in either the section in question or any other section."  <u>Ryan v. Ohio Edison Co.</u>, 611 F.2d 1170, 1178-79 (6th Cir. 1979), and cases cited.  <u>Accord</u> <u>Wisdom v. First Midwest Bank, of Poplar Bluff</u>, 167 F.3d 402, 408-09 (8th Cir. 1999) (complaint alleging violation of 18 U.S.C. § 1341 dismissed as there is no private right of action under the mail fraud statute), and cases cited.

Gibbs contends that <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985), recognizes a private cause of action for mail fraud.  This court disagrees.  In <u>Sedima</u>, the Court held that a private RICO action may be maintained even though the defendant had not been criminally convicted of the predicate act, including mail fraud.  473 U.S. at 493, 105 S. Ct. at 3283.  Thus, the Court stated, under the language of the RICO statute, "racketeering activity consists not of acts for which the

-27-

defendant has been convicted, but of acts for which he could be." Id. at 488, 105 S. Ct. at 3281. The civil, private, cause of action under RICO is expressly provided for by the statute. See id. at 483, 105 S. Ct. at 3278. There is nothing in Sedima, however, which created a civil cause of action for mail fraud. See also Swartz v. Schering-Plough Corp., 53 F. Supp. 2d 95, 105 (D. Mass. 1999) ("[w]hile mail fraud can be the predicate of a civil RICO action," there is no separate private right of action for mail fraud). For these reasons, Count VIII should be dismissed.

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that "Defendants' Motion to Dismiss the Amended Complaint (1/5/04)" (Docket # 16) be ALLOWED.[11]

_____ / Judith Gail Dein _____
Judith Gail Dein

---

[11] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

United States Magistrate Judge