# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Kipp R. Gibbs,<br>Plaintiff,<br><br>v.<br><br>SLM Corp. (a.k.a. Sallie Mae and as USA Education, Inc.), Sallie Mae Servicing, L.P., Nellie Mae, USA Funds, General Revenue Corporation, Defendants. | CIVIL ACTION NO.   03-cv-12565-PBS |

## PLAINTIFF'S WRITTEN OBJECTION TO PROPOSED FINDINGS AND RECOMMENDATIONS, PURSUANT TO FED. R. CIV. P. 72

### I. INTRODUCTION

The Plaintiff intends to appeal the Court's "Report and Recommendation on Defendants' Motion to Dismiss the Amended Complaint" ("Report") Docket # 31.

Plaintiff shall refer to the writer of the Court's Report and Recommendation on Defendants' Motion to Dismiss the Amended Complaint as "AUTHOR", rather than "Court", since it is unclear whether the signatory of the document, the honorable Judith Gail Dein, actually wrote the document, or whether it was written by her clerk, Thomas Quinn, or whether some other individual prepared the document.

In regard to items Plaintiff believes are in error, we should start where it is most clear:

### II. Plaintiff Communicated with Credit Bureaus and Noted Same in Amended Complaint.

AUTHOR errantly writes, "Gibbs has not alleged that he contacted any credit reporting agency…While Gibbs contends that facts exist which establish that there were communications with credit reporting agencies (Pl.'s Reply Opp. (Docket #29) at 7), such facts are not included in

the complaint and cannot be considered in connection with the Motion to Dismiss… (complaint cannot be amended through statements in briefs)…" (Report (Docket # 31) at 16). **This statement by the AUTHOR is inaccurate.**

AUTHOR overlooked Plaintiff's statement, "On August 18, 2003…Mr. Gibbs wrote to the credit bureaus…." (Amended Complaint ("Compl.") (Docket # 5) ¶ 29). And, "Plaintiff realleges and incorporates herein paragraphs 1 through 36 of this complaint." (Compl. at 10, Count III).

It, of course, is a requirement of the FCRA that the credit bureaus in turn must contact the defendants:

> Prompt notice of dispute to furnisher of information
>
> **(A)** In general
>> Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person.  15 U.S.C. 1681i(a)(2)(A).

As such, Plaintiff intends to appeal recommendations regarding Count III. (Report (Docket # 31) at 13 – 15).

## III. Plaintiff Contends That a Specific and Explicit Private Right of Action for Mail Fraud Exists in 18 U.S.C. §§ 1961 Et. Seq.

The AUTHOR incorrectly states, "It is well established that there is no private cause of action under the mail fraud statute which is 'a bare criminal statute with no indication of any intent to create a private cause of action…'" (Report at 27 – 28). The AUTHOR then cites Ryan v. Ohio Edison Co, and separately Wisdom v. First Midwest Bank. (Report at 28). The Defendants advised "the Court need wade no further; the Mail Fraud Statute is a bare criminal statute with no private right of action." (Defs.' Mem. (Docket # 17) at 8). Amazingly, the Court (in the instant case), it would appear, took the bait of the Defendants', hook, line and sinker. This was patently

bad advice. The Court should focus instead on specific United States statute that expressly provides a private cause of action for mail fraud, rather than upon defunct cases or cases containing errors, such as *Wisdom v. First Midwest Bank*.

United States Code specifically provides for a private cause of action in c. 96 of Title 18, otherwise known as the RICO statutes:

18 U.S.C. § 1964(c), in the section entitled "Civil remedies":

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee... 18 U.S.C. § 1964(c).

18 U.S.C. § 1962(b):

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. 18 U.S.C. § 1962(b).

18 U.S.C. § 1962(c):

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c).

18 U.S.C. § 1961(1)(B) defines "racketeering activity" to include:

> any act which is indictable under any of the following provisions of title 18, United States Code:... section 1341 (relating to mail fraud)... 18 U.S.C. § 1961(1)(B).

18 U.S.C. § 1341 defines mail fraud as:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. 18 U.S.C. § 1341.

*United States v. Spielberger, D.C.Va.*, 28 F. Supp. 380, 382:

> "Another and a very persuasive reason for overruling this demurrer is found in what is often called (in this connection) "the doctrine of lulling letters". This doctrine is clearly set forth in *Preeman v.*

*United States*, 7 Cir., 1917, 244 F. 1, 9: "The scheme alleged being one for obtaining money through the fraudulent representations and practices set forth, the use of the mails, even after the money is received, for the purpose of assisting in retaining the money, or to convey to the victim assurances calculated to lull him into inaction and to postpone, perhaps indefinitely, his taking action in respect to his loss, is within the purview of the law which condemns depositing or taking [*383] from the mails any letter, etc., for the purpose of executing any scheme to defraud." And to the same effect, see *Bogy* [**7] *v. United States*, 6 Cir., 1938, 96 F.2d 734, 740; *Lewis v. United States*, 9 Cir., 1930, 38 F.2d 406, 416." United States v. Spielberger, D.C.Va., 28 F. Supp. 380, 382.

Plaintiff's complaint, Count VIII:

> The Defendants committed numerous counts of Federal Mail Fraud in violation of federal statute 18 U.S.C. § 1341 by sending lulling letters designed to prevent students from seeking justifiable and equitable relief in a court of law. (Compl. ¶ 47).

Plaintiff's complaint specifies dates and entities from which lulling letters were received. (Compl ¶¶ 30, 32).

Plaintiff further points out the obvious lulling letters with the following:

> Each time the Defendants sent/send out a bill or statement to a student loan borrower that purposefully misstates the accurate balance that they owe it is mail fraud, as defined by statute and as supported by common law. (Pl.'s Opp. Mem. (Docket # 22) at 9).

## IV. Count V – Breach of Contract.

The AUTHOR writes, "the precise nature of the breach of contract is undefined." (Report at 26). However, the complaint states, "Interest was calculated on an amount not agreed upon .... Defendants willfully increased the interest charge on his student loan .... The overcharge of interest is a breach of contract." (Compl. ¶¶ 18, 43, 44). The AUTHOR continues, also in error:

> As an initial mater, the Complaint is devoid of any details about the alleged breach of contract. No contract provision is identified, nor are the dates the charges were assessed defined. In addition, the specific parties to the contract are not identified. (Report at 25 – 26).

The foregoing statement by the AUTHOR is untrue, as is revealed by the following (Compl. ¶¶ 12, 13):

> Kipp Gibbs entered into contracts for student loans with the following lenders: Barnett Bank, AFSA, ELSI and ELSC.

> In 1995, USA Funds and Nellie Mae pressured Mr. Gibbs into signing a consolidation note under duress. Under the terms of this consolidation, interest that had accrued on his loans was capitalized and added to the principal.

The Court should be cognizant of applicable law, specifically:

> The guaranty agency must use common application forms, promissory notes, Master Promissory Notes (MPN), and other common forms approved by the Secretary." 34 CFR § 682.401(d)(3). (Pl.'s Opp. Mem. (Docket # 22) at 4, footnote 7).

Gibbs furnished to the Court the promissory note evidencing the disputed contract. (See Exhibits 12, 12B).

Also, Plaintiff, Gibbs, furnished a letter written, by Sallie Mae Servicing, L.P. in the name of USA Funds, which lists Sallie Mae Servicing as the servicer, USA Funds as the guarantor, Nellie Mae as the lender, and General Revenue Corporation as the collection agency, to the Court. (See Exhibits 8A, 8B). Plaintiff submitted to the Court evidence of the disputed principal, interest rate, and collection costs. (See Ex. 9). Gibbs provided a credit report that lists Nellie Mae as the creditor and USA Funds as both the collection agency and as guarantor. (See Ex. 11A).

Further, the Defendants admit sufficient facts to establish that the disputed contract exists: "Defendants obtained the loan." (Defs.' Mem. at 12). "…the Defendants obtained the debt at issue …. the Defendants obtained the loan." (Defs.' Mem. at 16). "…the plaintiff alleges that the Defendants over-charged him interest under the 1995 Consolidated loan. The Plaintiff entered into that agreement [with Defendants]…" (Defs.' Mem. at 18).

In good form, the AUTHOR quotes <u>Overton v. Torruella</u>, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (Report at 2):

> On a motion to dismiss, <u>the court must read a pro se plaintiffs allegations liberally</u> *and* <u>apply a less stringent standard to a pro se pleading</u> than to a complaint drafted by counsel …. Nonetheless, pro se plaintiffs must comply with the applicable procedural and substantive rules of law, and dismissal remains appropriate when the court lacks jurisdiction over the claim or the parties and when the complaint fails to <u>even suggest</u> an actionable claim. (Emphasis added by Plaintiff, Kipp R. Gibbs.)

The AUTHOR goes on to say, "Applying these standards to the instant case…" (Report at 2). However, the application of said standards would appear to the untrained eye to be wholly absent in the document. It would be challenging to identify with specificity a single instance where the supposed standard was applied; and therefore difficult to imagine that anything other than lip service to the tenet was considered. There is <u>not one</u> instance the Plaintiff is able to highlight in the document that contains a finding or recommendation consistent with this lofty, yet seemingly illusory tenet. Indeed, the Report not only does not apply the standard as enumerated above, the Report regularly omits statements made by the Plaintiff, excerpts the

Plaintiff out of context, fails to examine case law or statutes cited by the Plaintiff; yet quotes from

the Defendants' flawed briefs *liberally*.

The AUTHOR has seemingly not even employed the typical standard:

> In ruling on a motion to dismiss for failure to state a claim, the Court should only dismiss a claim if it is certain that, even if all of the allegations in the complaint are true, the law would not permit the relief requested. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.), *cert. denied*, 484 U.S. 944 (1987). Therefore, all allegations in the complaint are to be taken as true and construed in the light most favorable to the plaintiff. *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 925 (9th Cir. 1993), *cert. denied*, 115 S. Ct. 295 (1994). Myles v. MidCom Communications, Inc., No. C96-614D (W.D.Wash. Nov. 19, 1996)

Not only is the AUTHOR in the instant case not construing allegations as true, the AUTHOR

discards the bulk of allegations with regrettable regularity.

It is a conspicuous juxtaposition (or perhaps a misunderstanding of how the omission is likely

to be interpreted by a reader) by the AUTHOR to write that Sallie Mae Servicing is "neither

sponsored by nor an agency of the United States," and in the very next sentence identify USA

Funds as "a guarantor...for federal and state agencies," yet neglects to mention that USA Funds is

not an agency of or sponsored by the United States, and, in fact, is controlled absolutely by SLM

Corporation. Would any diligent reader not presume from the structure of the paragraph that

USA Funds was or might be acting for or on behalf of the government? In fact, it is <u>not</u>. It is a

curious inclusion to reference the statement regarding Sallie Mae Servicing, yet leave out the

exact same statement found in the complaint regarding USA Funds. Indeed, the competitors of

USA Funds are attempting to limit USA Funds bald insinuations that it is working on behalf of

the government.

We might, by way of another example, examine the somewhat overstated excerpt from Am.

Tel. & Tel. Co. v. IMR Capital Corn., 888 F. Supp. 221, 25 1-52 (D. Mass. 1995) (internal

citation and quotation omitted), wherein the AUTHOR cites, "a reviewing court is obliged neither

to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions,...", etc.

(Report at 7). (Since the AUTHOR seems to be unclear, here is an example of a what could be

considered a bald assertion or unsubstantiated conclusion, but not of a circumlocution: "This

report could easily be passed off as having been ghost written by Defendants' counsel. It is an

absolute shame, insofar as the numerous errors and inaccuracies that are contained within it." It should be noted that it is not the Plaintiff's opinion that the Defendants ghost-wrote the Report, nor that they were conferred with regarding its content, and that this is an example.) The AUTHOR leaves out an important qualification in <u>Am. Tel. & Tel. Co. v. IMR Capital Corn.</u> ("AmTel"): wherein AmTel refers with such hyperbole to complaints that are "conclusory or generalized." Or, more importantly, that the whole hyberbolic quote refers to specific and exacting pleading requirements of a Sherman Anti-trust claim:

> In making this determination, [**75] a court should accept the well-pleaded complaint as true **and indulge every reasonable inference in favor of the plaintiff**. Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). This standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how **conclusory or generalized**." U.S. v. Avx Corp., 962 F.2d 108, 115 (1st Cir. 1992). "[A] reviewing court is obliged neither [*252] to "credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions. **'Empirically unverifiable' conclusions, not 'logically compelled**, or at least supported, by the stated facts,' deserve no deference." Id. (citations omitted). **In particular, a complaint containing vague pleadings lacking the requisite factual allegations of an antitrust claim** is insufficient to state a cause of action. Americana Industries, Inc. v. Wometco de Puerto Rico, Inc., 556 F.2d 625, 627 (1st Cir. 1977); Gilbuilt Homes, Inc. v. Continental Homes of New England, 667 F.2d 209 (1st Cir. 1981). (emphasis added)

> <u>In order to establish a claim under Section 1 or 2 of the Sherman Antitrust Act, 15 U.S.C. § § 1, 2, IMR must either show that ATT committed one of a limited category of per se antitrust violations (see U.S. Healthcare, Inc. v. Healthsource, Inc., 986 F.2d 589, 593-594 (1st Cir. 1993)), or prove its case under the so-called "Rule of Reason."</u>

The AmTel court does not reference in any way the standards of a pro se complaint, and, indeed, is concerned explicitly with the heightened pleading requirements of an anti-trust case. Even if such a standard were applied, it is irrelevant. In contrast, SPECIFIC elements of the plaintiff's complaint:

1. "Interest was calculated on an amount not agreed upon...Defendants willfully increased the interest charge on his student loan, which resulted in an overcharge of $939.79, by illegally capitalizing interest on his student loan..."
2. "...without notice or AUTHORity, Defendant(s) augmented penalty amount...Defendants have illegally augmented penalties on his student loan, which has resulted in an overcharge of $1384.56."
3. "On October 4, [2002] Plaintiff [found] entries on his credit report [that] doubl[ed] the amount of outstanding debt reported to credit bureaus."
4. "...proof of the incorrect default date was removed from his credit report." (Note that the <u>proof</u> it was removed, not the incorrect date itself. Mr. Gibbs has this proof in his possession.)

5. "General Revenue Corporation repeatedly violate federal law by making misrepresentations..., excessive harassment, belligerence and prevarication..."
6. and others.

Indeed, within the AUTHOR's response, e.g., are these words: "...interest charge which Gibbs contends the defendants were wrongfully capitalizing." This does not seem to be a generalized allegation.

The inclusion of this reference would almost appear exaggeration and grandstanding, in what could be perceived en total as a politicized response by the AUTHOR, which would seem not to be the honorable Judith Gail Dean, albeit she is the signatory. A partially uninformed observer (of which the Plaintiff, indeed, must be) might attribute the authorship to the judge's clerk, who egressed the hearing on March 19, 2004 accompanying the counsel of the Defendants'.

Separately, it is worthy to note that when the Plaintiff enquired of the clerk's office on where missing documents were, a clerk (who shall rename nameless) replied, "Well, you had the file." Is it really sensible for her to think that the Plaintiff would remove documents supporting his case, and then enquire about them? Or is there some other, perhaps more reasonable, explanation? (Please note that the majority of employees in the clerks' office appeared to act with neutrality and transparency.) It is equally of interest, at least to the Plaintiff, that the clerk of the honorable Judith Gail Dein, Thomas Quinn, when notified of missing documents in the PACER system, forbade the Plaintiff from presenting a replete set of documents to the magistrate judge in the upcoming hearing.

## V. Plaintiff's Complaint Does <u>Not</u> Sound in Nine Counts Against the Defendants Without Distinction.

"The relevant Complaint sounds in nine Counts, <u>all</u> (emphasis added) of which are alleged against all of the defendants without distinction." (Report at 6). **This is in an inaccurate statement**. To wit:

### A. Distinct allegations:

- "USA Funds and Nellie Mae pressured Mr. Gibbs into signing a consolidation note under duress." (Compl. ¶ 13).

- "General Revenue Corporation, began to harass Mr. Gibbs." (Compl. ¶ 23).
- "GRC stated that Nellie Mae reported to the credit bureaus, and to speak to them if it was inaccurate. Mr. Gibbs contacted Nellie Mae, who said GRC was responsible for reporting to the credit bureaus." (Compl. ¶¶ 25, 26).
- "On or about November of 2002, Mr. Gibbs contacted General Revenue Corporation (GRC) to inquire about payment in full and how to remove negative credit. Plaintiff, Kipp Gibbs, pointed out to GRC that his credit report showed the incorrect date of default. Subsequently, proof of the incorrect default date was removed [,but not the incorrect date]." (Compl. ¶¶ 21, 22).
- After repeated attempts to resolve these issues via telephone over several months…. Mr. Gibbs continued to receive phone calls from and placed calls to Defendants, General Revenue Corporation, Sallie Mae Servicing, L.P., Nellie Mae, and USA Funds. These phone calls…often became a vehicle for the Defendants to threaten and harass Mr. Gibbs. (Compl. ¶¶ 27, 28).
- "The collection agency General Revenue Corporation repeatedly violates federal law by making misrepresentations…, by excessive harassment, belligerence and prevarication…" (Compl. ¶ 31).

Then, within the text of various Counts: "Plaintiff realleges and incorporates herein paragraphs 1 through 36 of this complaint."

**B. Defendants operate as a joint enterprise.**

"Defendants…appear to operate as a joint enterprise." (Compl. at 1).

"SLM Corp., …is a holding company of the other named defendants, except for USA Funds, which it merely controls." (Compl. ¶ 2).

"USA Funds is a registered service mark of SLM Corporation….Defendant, USA Funds, is administered by Sallie Mae Servicing, L.P., a wholly owned subsidiary of SLM Corp." (Compl. ¶ 5).

## VI. Plaintiff Should Be Allowed to Amend Complaint If Court Maintains That Such Amendment Is Necessary for Some Claims.

Plaintiff disagrees with AUTHOR's assessment "that amendment of most of the claims would be futile." (Report at 1, footnote). The very use of the word "most" is troubling, as the AUTHOR did not specify <u>any</u> claim that should be amended. Indeed, the Plaintiff has pointed out several pivotal inaccuracies of the AUTHOR.

AUTHOR quotes Defendant and says that complaint was amended on 12/3, 12/4 and 12/9. (Report at 5). AUTHOR neglects to mention:

The Defendants have only effectively seen two amendments, since they received initial notice in one package that contained the summons, complaint, amended complaint, and amended complaint (12/09/03). *All of these items were in the first civil action communication they received, and were*

*essentially the same in content."...* " The Defendants, in the stipulation that they AUTHORed, essentially conceded that they effectively only had to respond to a *single* complaint: 'Pursuant to Fed. R. Civ. P. 12(a)(1)(A), the Sallie Mae Defendants have twenty (20) days to answer or otherwise respond.' Fed.R.Civ.P. 12(a)(1)(A) specifically and exclusively deals with the summons and initial complaint: '[A] defendant shall serve an answer (A) within 20 days after being served with the summons and complaint.' And the record shows that they have only filed one response. (Pl.'s Opp. Mem. (Docket # 22) at 15).

Therefore, the Defendants' would not be overly burdened by having to respond to an

amended complaint, since **Defendants have only responded to a single complaint, and had an**

**extraordinary 47 days to do so**.

[I]t is a general legal principle that "administrative pleadings are liberally construed and easily amended'" and permission to amend will usually be freely given. Yaffe Iron & Metal Co., Inc. v. Environmental Protection Agency, 774 F.2d 1008, 1012 (10 Cir. 1985); Reynolds Metal Company, Docket No. RCRA-1092-05-30-3008(a) (EPA ALJ, February 5, 1993). If leave to amend is to be denied, it must generally be shown that the amendment will result in prejudice to the opposing party and that the prejudice would constitute a serious disadvantage that goes beyond mere inconvenience. Port of Oakland and Great Lakes Dredge and Dock Co., MPRSA Appeal No. 91-1 (EAB, August 5, 1992); Spang & Co., Inc., Docket Nos. EPCRA-III-037 & 048 (Order Granting Motion To Amend Complaint, April 7, 1992).

## VII. Count III.

### A. Content of allegations.

AUTHOR states, "In Count III, Gibbs raises two negligence-based claims." (Report at 13). Gibbs raised three claims, two negligence based and one willful and with malice, i.e., "tortious."

"Plaintiff has failed to allege that the information was furnished 'with malice or willful intent to injure." (Report at 17). Inaccurate. Plaintiff stated, "Plaintiff, Kipp Gibbs, pointed out to GRC that his credit report showed the incorrect date of default. Subsequently, proof of the incorrect date of default was removed was removed from his credit report." (Compl. ¶ 22). Note that the proof was removed, not the incorrect date. (Plaintiff has the proof in his possession.)

"Defendants willfully increased the interest charge on his student loan…" (Compl. ¶ 43). Since the overcharge was reported to the credit bureaus as being owed by Plaintiff, quite clearly, plaintiff has alleged that the information was furnished with malice and willful intent to injure. Indeed, the AUTHOR writes, "When ruling on a motion to dismiss, 'a court…favors the plaintiff with 'every possible inference.'" (Report at 2).

**B. Pertinence of the FCRA.**

15 U.S.C. § 1681t(d):

> "Subsections (b) and (c) of this section [excluding state law] - ... (2) do not apply to any provision of State law (including any provision of a State constitution) that – (C) gives greater protection to consumers than is provided under this subchapter."

Accordingly, AUTHOR's supposition that M.G.L. c. 93, § 54A(g) is without effect is in error, unless the AUTHOR can argue that the private right of action provided by Massachusetts law is <u>not</u> greater protection for consumers.

This would be a challenging argument to make, since Massachusetts law allows a civil action for negligent reporting to credit bureaus.

**C. Certain defendants are debt collectors, and are therefore subject to the FDCPA.**

> General Revenue Corporation and USA Funds, Defendants in the present case, admittedly, are [debt collectors].[1] *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996) *cert. denied*, (521 U.S. 1106, 117 S.Ct. 2484, 138 L.Ed.2d 992 (1997): "We hold that USA Funds, as a private guaranty agency under contract with the federal Department of Education to guarantee student loans, is subject to the FDCPA. [the guarantee agency] is a private nonprofit organization with a government contract; it is not a government agency or employee." (Pl.'s Opp. Mem (Docket # 22) at 11).

Since Salle Mae Servicing, L.P. is acting in the capacity of USA Funds, and never obtained the debt, it is also a debt collector. The AUTHOR makes a perplexing, nearly incredible error:

> 15 U.S.C. § 1692a(6)(F)(iii) excludes from the definition of "debt collector" any person (or entity) collecting or attempting to collect "a debt which was not in default at the time it was obtained by such person." Thus, the defendants are not debt collectors... (Report at 20).

Apparently the AUTHOR does not understand that "obtained" means own. There are five defendants. Only one of the five owns the note. That means that any other entity is subject to the FDCPA.

**D. Private Right of Action.**

The AUTHOR states, "[T]he HEA provides an enforcement scheme which gives the Secretary of Education wide-ranging regulatory authority to enforce the provisions of the HEA." (Report at 21 – 22). **The Court should take note, therefore, of the Secretary's giving of a**

---

[1] From p. 4 of the Defendants' memorandum, under the section "Facts": "General Revenue Corporation ("GRC") is...[a] collection agency." *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996) *cert. denied*, (521 U.S. 1106, 117 S.Ct. 2484, 138 L.Ed.2d 992 (1997): "USA Funds concedes ... that it is a 'debt collector' under the FDCPA."

**private right of action to the student loan borrower,** "if capitalization is expressly authorized by...written consent of the borrower." 34 CFR § 682.202(b)(2)(ii). "The Secretary is *authorized to promulgate such regulations* as may be necessary to facilitate carrying out the provisions of this subsection." 20 U.S.C. § 1078-3(d)(4).

The AUTHOR continues with, "Although the First Circuit has not addressed this issue, 'nearly every court to consider the issue in the last twenty-years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions." (Report at 22). This is patently untrue. The cases cited by the AUTHOR have not and did not consider interest on student loans. Capitalization of interest on student loans is explicitly codified by the Secretary to require the written consent of the borrower.

The AUTHOR goes on to cite the Defendants' cite, McCulloch v. PNC Bank (Report at 22), with dealt with an entirely different subject matter, i.e., whether a potential borrower can force a lender to provide a loan. The AUTHOR should be of sufficient capacity to distinguish the difference between an existing lender relationship, wherein a contractual obligation exists, and that of a any given individual attempting to compel a lender to make a loan.

In Touche Ross & Co. v. Redington, 442 U.S. 560,575,578,99 S. Ct. 2479,2489,2490,61 L. Ed. 2d 82 (1979), which the AUTHOR cites (Report at 23), specifically spells out what cases would have a private right of action, which is inconsistent with the AUTHOR's narrow and incomplete reading of *Touche Ross*, wherein the AUTHOR parsed out part of the case, and neglected to heed the remainder of it. Crucial to the understanding of Touche Ross & Co. v. Redington is the following:

> It is true that in the past our cases have held that in certain circumstances a private right of action may be implied in a statute not expressly providing one. But in those cases finding such implied private remedies, the statute in question at least prohibited certain conduct or created federal rights in favor of private parties. E.g., *Cannon v. University of Chicago, supra* (20) U.S.C. § 1681); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (42 U.S.C. § 1981); *Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) (15 U.S.C. § 78j(b)); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (42 U.S.C. § 1982); *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (42 U.S.C. § 1973c); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (42 U.S.C. § 1982); *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (15 U.S.C. § 78n(a)). By contrast, § 17(a) neither confers rights on private parties nor proscribes any conduct as unlawful....The intent of § 17(a) is

evident from its face.  Section 17(a) is like provisions in countless other statutes that simply require certain regulated businesses to keep records.

It is easily discernible that "A consolidation loan made on or after July 1, 1994, shall bear interest at an annual rate on the unpaid <u>principal balance of the loan</u>," 20 U.S.C. § 1077(c)(1)(C) prohibits charging a different interest rate, and is complemented by "the charges that lenders may impose on borrowers, either directly or indirectly, <u>are limited to the following…a lender may capitalize interest payable by the borrower that has accrued…for a period of authorized deferment</u>," 34 CFR § 682.202, which can only be excused "<u>if capitalization is expressly authorized by…written consent of the borrower</u>," 34 CFR § 682.202(b)(2)(iii).

The AUTHOR then cites McCulloch v. PNC Bank (an 11th circuit decision) because the defendants cited it.  Namely, "'the detailed regulatory scheme…' compels the conclusion 'that Congress did not intend to create a private right of action…'" (Report at 23).  This compulsion the AUTHOR felt is more compulsive than compelling.  The Supreme Court, as it happens, has a different opinion regarding regulatory schemes and their implication.

<u>The Supreme Court disagrees</u>: "[T]he mere existence of a detailed regulatory scheme does not by itself imply preemption of state remedies."  English v. General Elec. Co., 496 U.S. 72, 87, 110 L. Ed. 2d 65, 110 S. Ct. 2270 (1990).  The first circuit is obligated to follow the opinion of the Supreme Court, rather than that of the not fully informed 11th circuit.

Next the AUTHOR **incorrectly** summarizes Hudson v. Academy of Court reporting: "(court declines to follow De Jesus Chavez and finds that student borrowers do not have a private right of action under the HEA)".  However, the AUTHOR correctly identifies the crucial difference in Hudson (Report at 24, footnote 10):

> "In Hudson, the court found no private right of action to enforce 34 C.F.R. § 682.604(d) which dictates how loan proceeds are to be applied, since the purpose of the regulation 'was to protect the government and the lending institution from the misapplication of the loan proceeds' <u>and not to benefit students in particular</u>. (emphasis added by Gibbs)"

But errs in his or her analysis:

> "However, even under Hudson's 'regulation by regulation' analysis, Gibbs' action would fail since there is no evidence that the specific regulation he is seeking to enforce relating to loan charges

were intended to benefit the borrowers, as opposed to the government and the lending institutions..."

**The AUTHOR's statement next above is absolutely untrue.** <u>In fact, 34 CFR §§ 682.202(b)(2) and 682.202(b)(3) provide the specific element the Court seeks to find, a specific regulation intended to benefit the borrower, beginning with the opening statement of 34 CFR 682.202:</u>

> "The charges that lenders may impose on borrowers, either directly or indirectly, are limited to the following:
> ...
> (2) ...a lender may capitalize interest payable by the borrower that has accrued—
>    (i)   For the period from the date the first disbursement was made to the beginning date of the in-school period;
>    (ii)  For the in-school or grace periods, or for a period needed to realign repayment of an SLS with a Stafford loan, if capitalization is expressly authorized by the promissory note (or with the *written consent of the borrower*);
>    (iii) For a period of authorized deferment;
>    (iv)  For a period of authorized forbearance; or
>    (v)   For the period from the date the first installment payment was due until it was made.
> (3) ...Capitalization is again permitted when repayment is required to begin or resume."

Notice the words "if capitalization is expressly authorized by...written consent of the borrower" in 34 CFR § 682.202(b)(2)(ii). Yet again, this information was provided to the Court (Pl.'s Opp. Mem. (Docket # 22) at 5). However, it would appear that the AUTHOR either did not read, did not remember reading, or did not properly evaluate the briefs of the Plaintiff.

The <u>only</u> previous case that dealt with overcharges by a lender is the De Jesus Chavez v. LTV Aerospace Corp., 412 F. Supp. 4 (N.D. Tex. 1976).

The AUTHOR's would appear to have employed a cursory, cookie-cutter approach to a subject that deserves more than a peremptory, hastily conceived, regurgitation of the Defendants' brief. Almost the entire response from the AUTHOR is a verbatim recitation of the Defendants' counsels' one-sided, biased, and inaccurate briefs. One would expect the defendants to put forth a slanted argument to attempt to extricate themselves from transgressions, but would not expect the AUTHOR to parrot it apparently unexamined. How, e.g., can the AUTHOR explain missing the actual law in regard to private action for mail fraud, when the Plaintiff pointed the Court to Chapter 96 of Title 18?

## VIII. Count I - Duress.

It is generally held to be essential to the ratification of a transaction or contract procured by duress that the influence of the duress be removed prior to the alleged ratifying conduct. <u>Mullan v. Bishop of Diocese of Orlando,</u> (Fla App. D5) 540 So.2d 174, 14 FLW 691n  There can be no ratification while the duress continues. Conduct in apparent recognition of instruments executed under duress does not constitute a ratification of such instruments. <u>Motor Equipment Co. v. McLaughlin,</u> 156 Kan. 258, 133 P.2d 149. The duress existed in the form of threatened negative credit action and the artifice of USA Funds pretending to be an instrument of the government. It was discovered in 2003 that USA Funds <u>is not</u> an agency of or sponsored by the United States, and no ratification occurred since that time. Furthermore, they have not removed the threat of negative credit reporting to this day.

The Plaintiff should not have to remind the AUTHOR that all allegations in the complaint are to be taken as true and construed in the light most favorable to the plaintiff. *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 925 (9th Cir. 1993), *cert. denied*, 115 S. Ct. 295 (1994).

However, the AUTHOR sought to impugn Mr. Gibbs and distorts his complaint to do so. The AUTHOR has adopted the extraordinary argument of the Defense, wherein the AUTHOR equates making payments as a "benefit": "Gibbs...accepted the benefits thereof by making loan payments..." (Report at 9). Think of that. That is an astonishing perspective. How about: "Gibbs was coerced to make loan payments under a consolidation loan that increased the interest rate and principal of his student loans." Still sound like a benefit? The AUTHOR continues with more inaccurate recitation of the Defendants absurd argument by classifying "obtaining two deferments" that cost Gibbs no less than $5849.37 in interest, <u>that he would not have had to pay under the previous agreements,</u> as a benefit. (Report at 9). The AUTHOR's position is utterly absurd, and is an unequivocal regurgitation of the Defendants' asinine invention: "The Plaintiffs actions here—making the initial payments on the loan and accepting the benefits of two deferments—make clear that there was no duress." (Defs.' Mem. (Docket # 17) at 15).

Plaintiff was eligible to continue to receive deferments *on the student loans he had before consolidation,* with one clear exception: he did not have to pay interest during deferment periods on those loans, *but had to pay interest during periods of deferment under the new consolidation loan* that he was forced to sign. How, in any scenario, having to pay $5849.37 in interest can be characterized as a "benefit" by the Defendants is a mystery. (Pl.'s Opp. Mem. (Docket # 22) at 16).

## IX. Counts VI and VII – Fraud.

### A. Fraud claim of plaintiff not addressed by Court.

The AUTHOR does not even address fraud claims made by Plaintiff. "Defendants conspired to defraud (conspiracy to defraud) students by purposefully overcharging their accounts." (Compl. ¶ 45).

The AUTHOR instead chooses to focus upon an irrelevant statement:

As Gibbs admits, he could not have relied on this statement [made by Robert Stocker in 2003] in entering into the Consolidated Loan ... [wherein Gibbs states that he] 'surely could not have relied and acted upon a statement made in December of 2003' .... Absent reliance, Gibbs cannot maintain a claim for fraud. (Report at 12 – 13).

Yet the AUTHOR parsed out and ignored the very next sentence, which specified reliance, an element of a fraud pleading: "But he [Plaintiff] did rely upon statements made variously by the Defendants, wherein the balance due was misrepresented both in writing and on the telephone, numerous times since the year 2000 (which began in August of 2000, as is averred in ¶¶ 17 and 18 of complaint." (Pl.'s Opp. Mem. (Docket # 22) at 16). Here is the Plaintiff, Gibbs', statement, as it appeared (Pl.'s Opp. Mem at 16):

The Plaintiff omitted that the date of Sallie Mae's corporate counsel's fraudulent statement was December 18, 2003. But even if the Plaintiff had included the date he surely could not have relied and acted upon a statement made in December of 2003—**but he did rely upon statements made variously by the Defendants, wherein the balance due was misrepresented both in writing and on the telephone, numerous times since the year 2000 (which began in August of 2000, as is averred in ¶¶ 17 and 18 of complaint.)** (emphasis added)

How can the Court explain the blatant, and seemingly artful omission of the rest of Mr. Gibbs' statement, wherein Mr. Gibbs has clearly indicated that he is not holding the statement of Robert Stocker as the basis for the count?

What exactly is being "admitted" here, as the AUTHOR contends? "As Gibbs admits, he could not have relied on this statement in entering into the Consolidated Loan..." (Report at 12).

Yes, clearly.

**B. The fraud perpetrated by the Defendants is a complex fraud.**

This fraud is a complex fraud, wherein the defendants have attempted to hide the illegal charges and written lulling letters to prevent its discovery and as such is subject to a different standard of pleading.

**X. Other Items of Note.**

"Gibbs was in communication with GRC, Nellie Mae, Sallie Mae Servicing, L.P. and USA Funds…." (Report at 5). Incomplete. "Sallie Mae Servicing, L.P. replied in writing to telephone calls he [Gibbs] had placed to SLM Corp. (Sallie Mae), the parent company." (Compl. ¶ 30).

## XI. CONCLUSION

A complaint should not be dismissed for failure to state a claim unless it appears <u>beyond</u> <u>doubt</u> that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Fed.Rules Civ.Proc. rule 12, 28 U.S.C.A., *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99.

For all of the foregoing reasons, and as a matter of law, the Defendants' Motion to Dismiss must be denied.

Plaintiff intends to appeal all matters raised within this document.

Kipp R. Gibbs,
Plaintiff, Pro Se
PO Box 42,
Osterville, MA 02655
(508) 292-2280