IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 OCT 14 P 4: 33

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| KIPP GIBBS, individually and on behalf of all other similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| SLM CORPORATION, SALLIE MAE SERVICING L.P., NELLIE MAE, USA FUNDS, and GENERAL REVENUE CORPORATION, | ) ) ) ) ) |
| Defendants. | ) ) |

Civil Action No. 03-CV-12565-PBS


**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED CLAIMS FOR NEGLIGENCE**
**(COUNT III) AND BREACH OF CONTRACT (COUNT V)**


Peter E. Gelhaar (BBO #188310)
Matthew N. Kane (BBO #636801)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
(617) 720-2880

Pursuant to Fed. R. Civ. P. 12 (b)(6), Defendants SLM Corporation, Sallie Mae Servicing, L.P. (n/k/a Sallie Mae, Inc.), Nellie Mae, United Student Aid Funds, Inc. ("USA Funds"), and General Revenue Corporation (collectively the "Defendants"), submit this memorandum in support of their motion to dismiss Plaintiff's Amended Count III and Count V ("Amended Claims"), dated September 24, 2004.

## INTRODUCTION

Although Plaintiff Kipp Gibbs ("Plaintiff") has now filed _six_ complaints in this matter, he continues to fail to state any actionable claims. On September 8, 2004, the Court dismissed all nine claims set forth in Plaintifff's "Amended Complaint 1/05/04" (hereinafter "Jan. Amend. Compl."). Most of the claims were dismissed on the grounds that Plaintiff had failed to state actionable claims under the statutory and regulatory framework governing student loans.[1] Seven of the nine claims were dismissed with prejudice. Plaintiff was, however, permitted leave to amend the present claims: negligence and breach of contract.[2]

Although Plaintiff has styled the Amended Claims as common law claims, both sets of claims arise from the same alleged statutory and regulatory violations that were already deemed inactionable. Specifically:

- Plaintiff's claim for negligent reporting to the credit bureaus arises from the Fair Credit Reporting Act;[3]

---

[1] These statutes and regulations include the Higher Education Act of 1965 (20 U.S.C. § 1070, _et seq._), as amended, Title 34 of the Code of Federal Regulations, the Fair Credit Reporting Act (15 U.S.C. § 1681 _et seq._) and the Fair Debt Collections Practices Act (15 U.S.C. § 1692, _et seq._). _See also McCullogh v. PNC Bank_, 298 F.3d 1217, 1226 (11th Cir. 2002) (noting that the regulations impose "specific and detailed" requirements).

[2] The Court's order was limited to these two claims. In fact, the Court specifically denied the Plaintiff any further leave when it denied his motion for leave to amend his complaint. (_See_ Order, dated August 27, 2004).

[3] _See, e.g.,_ Amended Claim IIIA ¶ 18.

- Plaintiff's Claim for negligent supervision arises from the Fair Debt Collection Practices Act;[4] and

- Plaintiff's claim for breach of contract is premised on alleged violations of regulations promulgated by the United States Department of Education.[5]

As this Court previously noted, "Gibbs cannot circumvent the statutory and regulatory scheme by calling his claim a breach of contract" or a negligence claim.[6] Yet that is precisely what he has done. Because the Court has already ruled that these statutory and regulatory claims are not actionable, the Amended Claims should be dismissed—like the other seven claims already dismissed—with prejudice.

Even if the Court construed these claims as common law claims outside of the statutory and regulatory framework, they still must be dismissed for at least two reasons. First, Plaintiff's common law claims are barred by the FCRA, FDCPA and statute of limitations. Second, this Court lacks jurisdiction over these two claims insofar as they are construed as straight common law claims.

In her opinion recommending dismissal of all claims, Magistrate Judge Dein concluded that "the amendment of most of the claims would be futile." (Opinion at n.1). The Court's expectation has been fulfilled: the Amended Claims are futile and must therefore be dismissed.

---

[4]  *See* Amended Claim IIIC ¶¶ 33, 37.

[5]  *See* Jan. Amend. Compl. ¶¶ 18-19. The present Amended Claims are based on the same set of operative facts set forth in the "Amended Complaint 1/05/04." In the Amended Claims, Plaintiff simply "realleges and incorporates... paragraphs 1 through 36 of the Amended Complaint, dated 1/05/04."

[6]  (Report and Recommendation on Defendants' Motion to Dismiss the Amended Complaint, Aug. 2, 2004 at 26) (hereinafter "Opinion").

# FACTS[7]

## A.    The Parties.

Mr. Gibbs is an individual who resides in Barnstable, Massachusetts. (Jan. Amend. Compl. ¶ 1).

SLM Corporation ("SLM"), commonly known as Sallie Mae, is the ultimate parent corporation of the various Sallie Mae divisions and subsidiaries. SLM was created pursuant to the Student Loan Marketing Association Reorganization Act of 1996 ("the Reorganization Act"). SLM is a publicly traded corporation listed on the New York Stock Exchange.[8]

Sallie Mae Servicing, L.P. was a limited partnership whose sole general partner was Sallie Mae, Inc.[9] At all relevant times, Sallie Mae Servicing, L.P. serviced loans for its affiliate, the Student Loan Marketing Association ("SLMA") and other holders of federally-insured student loans. Congress established SLMA to provide a national secondary market for student loans under the HEA. 20 U.S.C. § 1087-2. SLMA therefore purchases student loans—originated by other lenders—to create liquidity for the student loan program.[10]

Although Plaintiff purports to allege claims against Nellie Mae, there is no entity known simply as "Nellie Mae." Instead, there are two separate entities within the SLM

---

[7]    Plaintiff incorporates by reference all of the factual allegations set forth in paragraphs 1 through 36 of the January Amended Complaint. Beyond a handful of additional facts alleged in the amended counts themselves, the Amended Claims do not contain any additional facts.

[8]    There is no factual basis asserted in the complaint upon which SLM Corporation can be held liable in this action. Indeed, there is no specific allegation against SLM, except insofar as it is the ultimate parent corporation of several of the Defendants. That is not sufficient to state a claim. *United States v. Bestfoods,* 524 U. S. 51, 61 (1998), the Court stated: "[I]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries."). Accordingly, all claims should be dismissed as against SLM Corporation separate and apart from the reasons set forth *infra.*

[9]    On December 31, 2003, Sallie Mae Servicing, L.P. was merged into Sallie Mae, Inc.

[10]    Under the Reorganization Act, SLMA is being wound down as Sallie Mae transitions from a government-sponsored enterprise status to a fully private corporation.

corporate structure known as Nellie Mae Corporation and Nellie Mae Holding LLC. Nellie Mae Corporation provides education financing for undergraduate and graduate students and families under the Federal Family Education Loan Program ("FFELP") and privately funded loan programs. Nellie Mae Holding LLC is a Delaware limited liability corporation. Nellie Mae Holding LLC's sole member is the SLMA.[11]

General Revenue Corporation ("GRC") is the nation's largest university-focused collection agency. GRC is a subsidiary of USA Group Enterprises LLC, a Delaware limited liability corporation whose sole member is SLM.

USA Funds is a nonprofit guarantee agency that supports access to education. USA Funds has grown to become the nation's largest guarantor of loans made under the FFELP. Contrary to Plaintiff's assertion, USA Funds is not an affiliate, subsidiary, or otherwise controlled by SLM.

**B.    Plaintiff's Student Loan and Subsequent Default.**

Plaintiff obtained four separate student loans to finance his college education. (Jan. Amend. Compl. ¶ 12). In 1995, Mr. Gibbs agreed to consolidate these loans, entering into a promissory note with Nellie Mae and the guarantor, USA Funds. (*Id.* ¶ 13; Amend. Count V ¶ 1). Thereafter, Mr. Gibbs made scheduled payments on the 1995 Consolidated Loan. (Jan. Amend. Compl. ¶ 15). In 1996, Mr. Gibbs requested and received a deferment. (*Id.* ¶ 14). He requested and received a second deferment in 1998. (*Id.* ¶ 14). Thereafter, he failed to make the required payments. (*Id.* ¶16). In 2000, USA Funds placed the 1995 Consolidated Loan in default. (*Id.* ¶ 17).

---

[11]    Because the Plaintiff has failed to state any claims against any of the Defendants including "Nellie Mae," it is not necessary for present purposes to determine which entity the Plaintiff intended to name as a defendant in this lawsuit.

In 2003, Plaintiff had several communications with Sallie Mae Servicing L.P., Nellie Mae and GRC. (*Id.* ¶¶ 24, 26, 30). GRC allegedly suggested that Plaintiff consider entering into a new promissory note, capitalizing the interest and penalties into a new loan. (*Id.* ¶ 33). Plaintiff refused and his loan remains in default. (*Id.* ¶ 36).

## C.    The Amended Claims.

Plaintiff first alleges that the Defendants negligently, and in some cases maliciously, made erroneous entries on his credit report. (Amended Counts IIIA, IIIB). In addition, he alleges that the Defendants negligently supervised their employees. (Amended Count IIIC). Finally, he alleges that the Defendants breached the terms of the 1995 Consolidated Loan principally by capitalizing interest and assessing penalties. As set forth below, none of these claims is actionable.

## ARGUMENT

## I.    PLAINTIFF'S NEGLIGENCE CLAIM (COUNT III) MUST BE DISMISSED.

### 1.    Plaintiff Has Failed to State a Claim for Negligence Arising From The Defendants' Alleged Reporting to Credit Bureaus (Count IIIA).

Plaintiff alleges that the Defendants misrepresented certain entries on his credit report, including his balance, payments dues and the Dates of Last Activity ("DLA"). As this Court previously concluded, the Fair Credit Reporting Act ("FCRA") governs the responsibilities of individuals and entities who provide and report information regarding consumer credit. (Opinion at 14). Therefore, the negligence claim should be construed under the FCRA. In any event, the claim fails under both the FCRA and common law.

## A. Plaintiff Has Failed to State A Claim for Negligence Arising from The Fair Credit Reporting Act.

First, the Court previously dismissed Plaintiff's negligence claim, in part, because he failed to allege the requisite link between a credit reporting agency and a specific Defendant. (Opinion at 16). Despite filing his sixth complaint in this action, Plaintiff has failed to remedy this critical defect.

For purposes of the FCRA, the Defendants are "furnishers of information." (Opinion at 14). As such, they have two basic obligations. *Akalgi v. Nationscredit Financial*, 196 F. Supp.2d 1186, 1192 (D. Kan. 2002)(holding that "furnishers of information" are subject to Section 1681s-2). First, furnishers of credit information have a duty to provide consumer reporting agencies with accurate information. 15 U.S.C. §1681s-2(a). In all events, however, consumers do <u>not</u> have a private right of action under subsection (a). (Opinion at 15); *see also* 15 U.S.C. §1681s-2(d) (providing for exclusive government enforcement). Therefore, Plaintiff has no claim under 15 U.S.C. §1681s-2(a).

Second, furnishers of credit information must conduct an investigation after receiving notice from a credit reporting agency of a consumer dispute. 15 U.S.C. § 1681s-2(b). While at least some courts have held that there is a private right of action under subsection (b),[12] any cause of action is "triggered *only* after the furnisher receives notice of the dispute *from a consumer reporting agency*, not just the consumer." *Aklagi*, 196 F. Supp.2d at 1193 (emphasis in part in original).[13]

---

[12] *See, e.g., Aklagi*, 196 F. Supp.2d at 1193.

[13] *See also Scott v. Amex Centurion S&T*, 2001 WL 1645362, *4 (N.D. Tex. 2001) ("The duties created by subsection (b) arise... only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information."); *Fino v. Key Bank*, 2001 WL 849700, *5 (W.D. Pa.

This Court dismissed Plaintiff's previous negligence claim. (Opinion at 16) (stating that Plaintiff "ha[d] not alleged that he contacted any credit reporting agency or that the agency, in turn, got in touch with any of the defendants."). In a weak attempt to cure his claim, Plaintiff simply parroted the Court's language and incorporated it into a bald assertion:

> "Per the requirement of the FCRA[,] the credit bureaus, in turn, contacted the defendants." (Amended Count IIIA ¶ 9).

This assertion, however, is totally devoid of any factual allegations. For example, Plaintiff does not identify the specific credit reporting agency or agencies that he contacted. Nor does he allege what he told these agencies about the disputed information that appeared on his credit report. Similarly, he does not allege which credit agency (within the unidentified group) actually contacted the Defendants. Further, he does not even attempt to identify which Defendant (among the five) was contacted. Without more, his claim necessarily fails.[14] *Carney*, 57 F. Supp. 2d at 502 (dismissing Section 1681s-2(b) claim where plaintiff failed to adequately allege notice).[15]

---

2001)(same); *Yelder v. Credit Bureau of Montgomery LLC*, 131 F. Supp. 2d 1275, 1289 (M.D. Ala. 2001) (same).

[14] This is not the first time that Plaintiff has made allegations devoid of any factual basis in an attempt to satisfy pleading requirements. For example, Plaintiff continues to allege that he "has retained competent counsel." (Jan. Amend. Compl. ¶ 11) (incorporated into Amended Breach of Contract and Negligence Counts). Although the retention of class counsel is a requirement of Fed. R. Civ. P. 23 and Plaintiff alleges this requirement (presumably to satisfy the rule), he has not, in fact, retained any such counsel. Instead, he continues to represent himself pro se.

[15] After Plaintiff commenced this action on December 3, 2003, Congress amended Section 1681s-2(b)(1) to add a new provision that imposes additional duties on furnishers of information "based on a direct request of a consumer." *See* Fair and Accurate Credit Transactions Act of 2003, Pub.L. No. 108-159, sec. 312, 117 Stat. 1952 (hereinafter "FACT"). The new requirements under FACT are to be defined by forthcoming regulations to be issued by the Federal Trade Commission, the National Credit Union Administration, and the Federal banking agencies. *Id.* at Section 312, Section 1681s-2(c)(8)(A); *see also* 69 Fed. Reg. 42616 (July 1, 2004) (seeking public comment on proposed summaries of rights and duties under FACT). In any event, these anticipated regulations are inapplicable to the present allegations. FACT, Section 3 (setting forth prospective effective dates); *Scuncio Motors, Inc., v. Subaru of New England, Inc.*, 715 F.2d 10, 12 (1st Cir. 1983). (stating that courts "have required 'clear, strong language' expressing an intent to give a substantive statute retroactive effect before the presumption of prospective effect may be overcome.").

Even if Plaintiff had adequately alleged notice (which he has not), his claim would still necessarily fail because he has not alleged that the Defendants failed in their duties under the FCRA. Once a "furnisher of information" receives the requisite notice, it has a duty to: (i) investigate the disputed information; (ii) review all of the relevant information provided to the credit reporting agency; and (iii) report the results of the investigation to the credit reporting agency and any other agency who received the information at issue if it is deemed inaccurate or incomplete. *See* 15 U.S.C. §1681s-2(b)(1)(A-D). The Plaintiff makes no allegation that the Defendants failed in any one of these enumerated duties.[16] Accordingly, his claim should be dismissed.[17]

### B. Plaintiff's Claim for Common Law Negligence Is Pre-Empted By The Fair Credit Reporting Act.

Even if the Court construed Count IIIA as a common law negligence claim outside of the FCRA, it would still fail. The FCRA contains an "absolute immunity provision" applicable to state law claims asserted against "furnishers of information." The absolute immunity provision provides that "[n]o requirement or prohibition may be imposed under the laws of any state ...with respect to any subject matter *regulated under ... section 1681s-2* of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies..." 15 U.S.C. § 1681t(b)(1)(F) (emphasis supplied). This provision bars any common law claims based on conduct governed by Section 1681s-2, including the duties imposed on "furnishers of information." *Aklagi*, 196 F. Supp. 2d at 1194. Because

---

[16] Moreover, holders of FFELP loans are required to report the status of delinquent loans to at least one national credit bureau. 20 U.S.C. §1080a. There are no facts pled to suggest that one or more of the Defendants did anything more than comply with the HEA statutory requirement.

[17] His negligence claims are also time-barred under the Fair Credit Reporting Act ("FCRA"). Any claim asserted under the FCRA must be brought within two years of the date the claim arises. 15 U.S.C. §1681p.

Plaintiff's negligence claim is based on conduct governed by Section 1681s-2, the absolute immunity provision applies and bars Plaintiff's common law negligence claim.

Even if the Court were inclined to look beyond the absolute immunity provision, Plaintiff's negligence claim would still be barred by the qualified immunity set forth in Section 1681h(e). That provision expressly bars consumers, such as Plaintiff, from asserting negligence claims against furnishers of information, such as Defendants, in the absence of malice or willful intent to injure the consumer. 15 U.S.C. § 1681h(e). In Count IIIA, Plaintiff has not alleged malice and his claim therefore fails under the qualified immunity provision of the FCRA. *Id.*

### 2. Plaintiff Has Failed to State a Claim for Tortious (Malicious) Reporting to Credit Bureaus (Count IIIB).

To circumvent the FCRA's immunity bar, Plaintiff alleges—for the first time—that the Defendants engaged in malicious reporting to the credit reporting agencies. Essentially, Plaintiff claims that the Defendants knowingly made false entries on his credit report after he filed the instant suit, presumably to retaliate against him. (*See* Count IIIB). There are several problems with this new claim.

First, Count IIIB goes beyond the permissible scope of amendment. Although Plaintiff moved to amend his claims (presumably so that he could include entirely new claims such as Count IIIB), the Court denied that motion. (Order, dated Aug. 27, 2004). Instead, the Court allowed Plaintiff narrow leave to amend just two of his nine claims: breach of contract and negligence. (Order, dated Sept. 8, 2004). Because the Court did not grant Plaintiff leave to amend his complaint to add new claims—including intentional torts—this claim should be dismissed.

Second, Plaintiff's claim (even if allowed to proceed) is barred by the FCRA. Plaintiff's claim is subject to the absolute immunity bar set forth in Section 1681t(b)(F). Plaintiff seeks to impose liability based on the alleged violations of Section 1681s-2, including that the Defendants knowingly provided inaccurate information to the credit reporting agencies. The absolute immunity provision includes "any subject matter regulated...under Section 1681s-2..." 15 U.S.C. § 1681t(b)(1)(F). It therefore encompasses the alleged conduct set forth in Count IIIB.

In addition, Plaintiff does not have a private right of action to assert this claim because it falls within 15 U.S.C. § 1681s-2(a). Specifically, Section 1681s-2(a)(1)(A-B) prohibits furnishers of information from reporting information with actual knowledge of errors. As set forth above, individual consumers do not have a private right of action under Section 1681s-2(a). (Opinion at 15) (citing cases). Rather, government officials have exclusive enforcement authority for alleged violations of Section 1681s-2(a). (*Id.*) Accordingly, Plaintiff has no private right of action to allege this claim—even under the guise of common law negligence or as an intentional tort. *Cisneros v. Trans Union LLC*, 293 F. Supp. 2d 1167, 1176 (D. Ha. 2003) (dismissing common law claims arising from alleged inaccurate credit reporting because such claims "can only be brought by government agencies and officials in accordance with §1681s-2(a)"). Because the FCRA provides immunity and bars any private right of action for such claims, Plaintiff's claim for malicious credit reporting must be dismissed.

Third, Plaintiff's claim is based on his mistaken belief concerning the significance of the Date of Last Activity ("DLA") appearing on his credit report. Plaintiff alleges that the DLA represents "the date that the account became delinquent." (Amended Count IIIA ¶ 3).

10

Accordingly, he claims that the correct DLA should be July 1998 and, by utilizing later DLA dates, the Defendants effectively "re-aged" the debt and prolong the period of default. (Amended Count IIIB ¶¶ 28-32).

This claim is based on fallicy: the DLA does not represent the delinquency date. Instead, it represents the "Date of Last Activity" on Plaintiff's account. Accordingly, the DLA is not fixed in time. Rather, it changes to reflect any new activity on the account at issue, including any payments received. Here, the DLA on the credit report attached to the Amended Count III was May 2003 (*see* Exh. 19). That entry was correct; in May 2003, the Internal Revenue Service provided a tax refund off-set of $850.75 on Plaintiff's loan. Indeed, Plaintiff acknowledges this off-set in the exhibits previously submitted in this action. (*See* Memorandum in Support of Plaintiff's Opposition of Defendant's Motion to Dismiss, Exh. 9) (Plaintiff notes that the May 2003 entry was "paid by gov't. through tax return").

Because Plaintiff's claim for malicious credit reporting exceeds the scope of the leave permitted by this Court, is barred by the FCRA, and is based on a faulty premise, it is not actionable and must therefore be dismissed.

### 3.    Plaintiff's Claim for Negligent Supervision Fails To State A Private Cause of Action. (Count IIIC).

The Court previously concluded that Plaintiff's negligent supervision claim "must be dismissed as it fails to state a private cause of action." (Opinion at 14). Nothing in the Amended Count IIIC alters the Court's analysis.

Plaintiff continues to assert this claim based on duties set forth in the Fair Debt Collection Practices Act ("FDCPA") (Amended Count IIIC ¶ 33). Courts have consistently ruled that the activities of student loan lenders and servicers in servicing and collecting federally insured student loans are not subject to the FDCPA where the lender or servicer

first obtained the loan before the borrower was in default. *See Skerry v. Massachusetts Higher Education Assistance Corp.*, 73 F. Supp.2d 47, 56 (D. Mass. 1999) (holding that MHEA was exempt from the FDCPA because "the challenged activity concerns a debt which was not in default at the time it was obtained by that entity.").

Here, Plaintiff's own allegations make clear that his student loans were not in default at the time that the Defendants obtained the debt at issue. He consolidated his loan with the Defendants in 1995. (Jan. Amend. Compl. ¶ 13). His loan was not placed into default status until August 18, 2000—five years after the Defendants obtained the loan. (*Id.* ¶ 17). Because the Defendants obtained the loan several years prior to default, they are exempt from the FDCPA. *Skerry,* 73 F. Supp.2d at 56 (holding that FDCPA did not apply because MHEA was not a "debt collector" within the meaning of the statute where it had obtained the debt prior to default). Accordingly, Count IIIC of Plaintiff's complaint must be dismissed for failure to state a claim.[18]

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT (COUNT V).

### a.    Plaintiff Does Not Have a Private Right of Action Because the Alleged Breach Is Premised on Purported Violations of Title 34 of the Code of Federal Regulations.

Plaintiff alleges that USA Funds and Sallie Mae Servicing L.P. improperly: (i) capitalized interest on his student loan at various times between April 1997 and August 2000;

---

[18]    Even if the Plaintiff's Fair Debt Collection Practices Act claim were construed as a common law negligence claim, it still must be dismissed. Plaintiff has failed to allege: (i) which of the Defendants was allegedly negligent in training and supervising their employees; (ii) what duty, if any, these Defendants owed to him; (iii) or that any alleged injury was proximately caused by the alleged negligence. In the absence of these allegations, the Plaintiff's negligence claim must be dismissed. *See Holland v. Good Bros. Inc.,* 318 Mass. 300, 302 (1945) (affirming dismissal where plaintiff failed to adequately allege negligence claim).

and (ii) assessed penalties of $1,384.56 "without notice or explanation."(Amended Count V ¶¶ 2-7).[19]

These claims are premised entirely on alleged violations of regulations promulgated by the United States Department of Education. (*See* Jan. Amend. Compl. ¶¶ 18-19).[20]  In fact, Plaintiff's student loan agreement is expressly subject to the Higher Education Act of 1965, as amended: Plaintiff's promissory note provides that "[t]he terms of this loan will be interpreted in accordance with the Higher Education Act of 1965, as amended, and State law and regulations which govern the Federal Loan Consolidation Program." (*See* Memorandum in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, Exhibit 12B, Section "Interpretation") (filed Feb. 12, 2004).[21]

Plaintiff does not have a private right of action to assert a breach of contract arising from alleged violations of Title 34. (Opinion at 26). As the Court has already made clear, "Gibbs cannot circumvent the statutory and regulatory scheme by calling his claim a breach of contract." (*Id.*) (citing cases). Notwithstanding the Court's directive, Plaintiff makes the same assertions under the guise of a common law breach of contract claim. Because Plaintiff's breach is premised on the Higher Education Act, and the regulations promulgated thereunder, his claim must be dismissed.

---

[19]  Because these allegations are made with respect to only two Defendants, this claim should be dismissed at the outset with respect to the three remaining Defendants.

[20]  These allegations set forth in these two paragraphs were re-alleged and incorporated into the Amended Contract Claim.

[21]  The Plaintiff submitted the 1995 Consolidated Loan Agreement as an exhibit to his previous opposition to the Defendants' initial motion to dismiss. Because the present complaint refers to (and is based upon) that agreement, the court may consider the agreement without converting the present Rule 12(b)(6) motion into a motion for summary judgment. *See Raytheon Co. v. Continental Casualty Co.*, 123 F.Supp.2d 22, n.1 (D. Mass. 2000) (noting that the Court considered insurance policies referenced in the complaint in connection with Rule 12(b)(6) motion, even though they were not attached to the complaint).

### b. Plaintiff's Breach of Contract Claim Is Barred By The Statute of Limitations Insofar as the Alleged Breach Accrued In 1997.

The statute of limitations provides that a breach of contract claim must be asserted within six years after the action accrues. M.G.L. c. 260 §2. In the present case, Plaintiff alleges that Defendants breached his loan agreement by improperly capitalizing interest on his student loan beginning in April 1997—more than seven years ago. (Amended Count V ¶ 2 *et seq.*) Because Plaintiff's contract claim is based on a breach beginning seven years ago, it falls outside of the limitations period.

Moreover, the entirety of the breach of contract claim is subject to the limitations period because Plaintiff alleges a series of related breaches, beginning outside of the limitations period. For purposes of the statute of limitations, the claim accrues as of the date of the first breach. *See New England Power Comp. v. Riley Stoker Corp.*, 20 Mass. App. 25, 31 (1985). If the limitations period was re-set for each subsequent breach, the limitations period would be essentially limitless. As the court stated in *New England Power*:

> "[P]laintiff's argument is in essence that by failing to remedy its first breach, the defendant committed a second breach, giving rise to a brand new cause of action and starting anew the limitations period. The fallicy of this approach is apparent. If we adopted plaintiff's position [that each alleged breach would trigger a new limitations period], limitations could be extended for virtually infinite time."

*Id.* at 31.[22] Here, Plaintiff alleges that the Defendants improperly capitalized interest on his student loan beginning in 1997 and continuing through 2000. On the face of the complaint, this breach began outside of the limitations period. To avoid the limitations period, Plaintiff would have to argue that—by failing to remedy their first breach with a new interest calculation—the Defendants committed subsequent breaches, re-setting the applicable limitations period. If Plaintiff were allowed to re-set the clock with each alleged breach, then

---

[22] *See also Patapanian v. MGM Contracting Co., Inc.*, 3 Mass. L. Rptr. 5 (Mass. Super. 1994) (same).

(as one court warned) "the limitations period could be extended for virtually infinite time."

*New England Power Comp.*, 20 Mass. App. at 31. Such a result cannot be countenanced.

M.G.L. c. 260 § 2. Accordingly, Plaintiff's breach of contract claim must be dismissed on

the grounds that Plaintiff failed to state a claim within the applicable limitations period.

*Goldman v. New England Horsemen's Benevolent and Protective Assn., Inc.*, 2003 WL

21498929 (Mass. App. 2003) (affirming dismissal of breach of contract claim where cause of

action accrued in 1995). [23]

### c. Plaintiff Has Not Stated An Actionable Claim for Breach Based on The Alleged Capitalization of Interest, Assessment of Penalties, or Failure to Provide Requested Information.

#### A. The Capitalized Interest, As Alleged, Was In Accordance With Applicable Regulations

Even if Plaintiff had asserted a claim within the limitations period and had a private

right of action (which he does not), he still has failed to allege a claim for breach because—

even as alleged-- the Defendants capitalized the interest on Plaintiff's loan in accordance

with applicable regulations. The Department of Education regulations expressly permit the

defendants to capitalize accrued interest. The applicable regulation expressly provides:

> "[A] lender *may capitalize* interest payable by the borrower that has
> accrued... [f]or a period of authorized deferment [or] for a period of
> authorized forbearance." 34 C.F.R. §682.202 (b)(2)(iii), (iv) (emphasis
> supplied).

Based on this regulation, lenders frequently capitalize accrued interest where, as here, student

loans are consolidated. *See, e.g., Ordaz v. Illinois Student Assistance Comm'n.*, 287 B.R. 920

---

[23]   The Plaintiff attempts to avoid the limitations issue, claiming that "20 U.S.C. §1091a establishes there is no statute of limitations for student loans." (Amended Count V ¶10). Plaintiff has mischaracterized the statute. Section 1091a applies to guaranty agencies, government and other officials seeking to collect student loan debts. On its face, Section 1091a does not apply to individual student loan recipients, like the Plaintiff. Therefore, Plaintiff's breach of contract claim remains subject to the limitations period set forth in M.G.L. c. 260 § 2).

(C.D. Ill. 2002) (noting that a student's consolidated loan was created "to bring the delinquent loan current, *capitalize the accrued interest* and extend the term to 2013.") (emphasis supplied).

In addition, these regulations specifically require guarantors, such as Defendant USA Funds, to capitalize interest upon assignment of the note in default. 34 C.F.R. §682.410 ("The guaranty agency *shall* capitalize any unpaid interest due the lender from the borrower at the time the agency pays a default claim to the lender.") (emphasis supplied).

Moreover, the regulations do <u>not</u> require the debtor's consent before capitalizing accrued interest. Indeed, the regulations require consent only with respect to interest that accrued "for the in-school or grace periods, or for a period needed to align repayment of an SLS with a Stafford Loan." 34 C.F.R. §682.202(b)(2)(ii); *see also* 34 C.F.R. §682.200(b) (defining grace period). Here, Plaintiff does not allege that interest was improperly capitalized when he was still in school or during any grace period. Defendants were therefore entitled to capitalize interest <u>without</u> seeking Plaintiff's consent. 34 C.F.R. §682.202(b)(2)(iii), (iv).

Accordingly, his claims concerning any alleged improper capitalization of accrued interest must therefore be dismissed.

### B.    Plaintiff Cannot State A Claim For Breach Arising From The Assessed Penalties.

Plaintiff also alleges that Defendants improperly charged him $1,384.56 in "penalties" over and above the limits set forth in the Department of Education regulations. (Amended Count V ¶ 7). Again, this claim is entirely premised on Title 34 of the Code of

Federal Regulations. Specifically, Plaintiff alleges that 34 C.F.R. §682.401 limits the amount of penalty that can be added to a student loan to 18.5%-- and that the Defendants have breached the contract by imposing penalties over and above 18.5%. (Jan. Amend. Comp. ¶ 19) (incorporated into Amended Count V).

Again, Plaintiff mischaracterizes the applicable regulation. Section 682.401 provides that the "basic agreement" between the Secretary of Education and any guaranty agency must limit collection costs to 18.5% of the outstanding principal and interest at the time when the guaranty agency consolidates or pays off the student loan. 34 C.F.R. §682.401 (b)(27). This requirement is therefore limited to: (i) agreements between the Department of Education and guaranty agencies; (ii) at the time these loans are consolidated or paid off. On its face, therefore, the regulation is clearly not applicable to Plaintiff; he is not a party to the "basic agreement" with the Department of Education, nor has any guaranty agency presented his loan for consolidation or pay-off following his August 18, 2000 default. Accordingly, any claims arising from 34 C.F.R. §682.401 for allegedly "excessive penalties" must be dismissed.

### C. Plaintiff Has Not Alleged Any Actionable Damages Arising From the Defendant's Alleged Failure to Respond to His Requests for Information.

Finally, Plaintiff's claim the Defendants failed to provide him with requested regulations and calculations is not actionable. (Amended Count V ¶ 8-9). As a preliminary matter, the regulations are in the public domain. Indeed, Plaintiff located these regulations within Title 34, reviewed them, and has asserted claims related to these regulations. Accordingly, any breach is simply not material.

Moreover, Plaintiff has not suffered any cognizable damages related to the alleged breach. Plaintiff's claimed damages for "despair" and "consternation" are not available in a breach of contract action. Further, Plaintiff cannot recover damages for the breach associated with filing the instant complaint. Plaintiff chose to file the instant suit and to amend his claims numerous times. Because he decided to proceed with this lawsuit (notwithstanding the Court's conclusion that "the amendment of most of the claims would be futile"), he voluntarily incurred any costs associated with this suit.

### III.    INSOFAR AS THE AMENDED COUNTS ARE DEEMED COMMON LAW CLAIMS, THIS COURT LACKS JURISDICTION.

As set forth above, Plaintiff's negligence and breach of contract claims arise from federal statutes and regulations. Because his claims are not actionable under the FCRA, FDCPA, the Higher Education Act of 1965, and Title 34 of the Code of Federal Regulations, they should be dismissed.

If, however, these claims are construed outside of the federal statutes and regulations, these claims must be dismissed for lack of jurisdiction. It is axiomatic that there is no federal question jurisdiction if the claims are construed as straight common law claims. 28 U.S.C. § 1331.

Nor is there diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff has not alleged complete diversity. In fact, Plaintiff alleges that Defendant Nellie Mae "is a corporation formed pursuant to the laws of the State of Massachusetts and having its principal place of business at 50 Braintree Hill Park, Suite 300, Braintree, MA 02184." (Jan. Amend. Compl. ¶ 4) Because Plaintiff is also a resident of Massachusetts (*see* Jan. Amend. Compl. ¶ 1), there is not complete diversity.

Even if Plaintiff alleged complete diversity, there would not be a basis for jurisdiction because Plaintiff has not alleged the jurisdictional amount requirement of $75,000. 28 U.S.C. § 1332(a). Plaintiff has the burden of proving the amount in controversy. *McNutt v. General Motors Corp.*, 298 U.S. 178, 189 (1936). In connection with Amended Count III, Plaintiff does not allege a specific number of damages over $75,000. Instead, he seeks an unspecified sum of "financial compensation." (Amended Count IIIA ¶ 20; Count IIIB ¶ 32; Count IIIC ¶ 37). In Count V, Plaintiff seeks damages for himself "in excess of $17, 898.85" and associated cots and fees. (Amended Count V ¶ 10).[24] Even if the Court were to look beyond these allegations, the total outstanding balance on Plaintiff's loan is approximately $50,000—well below the requisite jurisdictional amount. (Amended Count III, Ex. 19).

Accordingly, the Amended Claims must be dismissed for lack of jurisdiction insofar as they are construed as straight common law claims.

## IV.   THE AMENDED CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

The Court has already dismissed seven of Plaintiff's claims with prejudice. The Defendants respectfully request that these remaining claims similarly be dismissed with prejudice.

Plaintiff has already filed *six* complaints in this matter in both state and federal court. He has therefore had more than an adequate opportunity to cure his defective claims. *Thomas v. Amerada Hess Corporation*, 393 F.Supp. 58, 78 (M.D. Pa. 1975)("Repeated failure to cure deficiencies by amendments previously allowed is sufficient reason for

---

[24] At two hearings in this matter, Plaintiff has conceded that his actual damages may be much less. For example, at the January 29, 2004 Scheduling Conference before Judge Saris, Plaintiff conceded that the total amount of alleged improper penalties and interest on his student loan amounted to less than $5,000. He made the same admission during oral argument on the Defendants' initial Motion to Dismiss before Magistrate Judge Dein.

exercising discretion denying leave to amend further.").[25]  He should not be permitted a *seventh* chance to cure his claims.

Moreover, any such amendment would be futile given that Plaintiff has not alleged facts giving rise to any actionable claim.  *Demars v. General Dynamics Corp*, 779 F.2d 97, 99-100 (1st Cir. 1985)(affirming District Court's denial of leave to amend where amendment would have been futile).   In view of the numerous amendments and the futility of the claims, Plaintiff should not be given leave to amend yet again or permitted to pursue these claims on remand in Massachusetts state court.

## CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that the Amended Claims (IIIA, IIIB, IIIC, and V) be dismissed with prejudice.

Dated: October 14, 2004

Respectfully submitted,

SLM CORPORATION,  SALLIE MAE SERVICING L.P., NELLIE MAE, USA FUNDS, and GENERAL REVENUE CORPORATION,

By their attorneys,

*Matthew N Kane*

Peter E. Gelhaar (BBO #188310)
Matthew N. Kane (BBO #636801)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
(617) 720-2880

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by/mail/by hand

Date: 10/14/04 *Matthew N Kane*

---

[25]  *See also Williams v. Lewis*, 342 F.2d 727, 729 (4th Cir. 1965) (no error in denying leave to amend where proposed amended claims "were substantially the same grounds as the grounds asserted in previous complaints")